[No. 25039. Department Two. January 11, 1935.]

FREDERICK B. COLLINS, *Appellant,* v. NORTHWEST CASUALTY COMPANY, *Respondent.*[1]

¹Reported in 39 P. (2d) 986.

*Todd, Holman & Sprague* and *Clarence Innis* (*DeForest Perkins,* of counsel), for appellant.

*Shank, Belt & Rode,* for respondent.

GERAGHTY, J.—This case arises out of a liability policy of insurance issued by the respondent to the late Mrs. Wallace G. Collins, covering a Buick automobile owned by her. Mrs. Collins maintained a home in Seattle, in which her adult son, Frederick B. Collins, the appellant, and a housekeeper lived with her. She had another son, Wallace G. Collins, who was married and maintained his own home in that city. The appellant, while living with his mother, maintained a car of his own, which he permitted her to use, and she in turn had given him permission to use her car. He and his mother used one or other of the cars as suited their convenience.

The insurance policy here in question was written

on October 3, 1931. It insured Mrs. Collins against loss from liability imposed by law upon her for damages on account of bodily injuries or death accidentally suffered by any person as a result of the ownership, maintenance or use of the car described in the policy. The policy contained an extended coverage clause, as follows:

"A. EXTENDED COVERAGE: The terms and conditions of this policy are so extended as to be available, in the same manner and under the same conditions as they are available to the named Insured, to any person or persons while riding in or legally operating any of the automobiles described in this policy, and to any person, firm or corporation legally responsible for the operation thereof, provided such use or operation is with the permission of the named Insured, or, if the named Insured is an individual, with the permission of an adult member of the named Insured's household other than a chauffeur or a domestic servant; except that this extended coverage shall not be available to the owner or operator of a public automobile garage, automobile repair shop, automobile sales agency, automobile service station, or an agent or employee thereof. Provided further, however, that the limits named in the schedule shall first apply in payment of any loss or damage for which the named Insured is liable.

"The term 'Named Insured' as used in this paragraph shall mean the party named in Item I. of the Declarations on the face of this policy."

Another clause of the policy read:

"H. OWNERSHIP: Unless otherwise provided by agreement in writing added hereto, this entire policy shall be void in case of transfer or termination of the interest of the Insured other than by death of the Insured; or in case of any change in the nature of the insurable interest of the Insured in the property described herein either by sale or otherwise."

Mrs. Collins died May 12, 1932, leaving a nonintervention will, in which J. T. McVay was named as

executor, with a proviso that, if he should die or otherwise fail to act, her sons, Wallace G. and appellant, were to act as joint executors. In the will, she bequeathed the automobile to her son Wallace. McVay was in California at the time of Mrs. Collins' death, and the will was not admitted to probate until May 24th. McVay qualified as executor May 26th.

On May 17th, and prior to the probate of the will, appellant, while driving his mother's car accompanied by his brother Wallace, accidentally injured one Shirley Gordon, a minor. She sued appellant for damages. The appellant, claiming protection under the extended coverage clause of his mother's policy, tendered defense of the suit to respondent. Respondent denied liability, and declined to assume the defense.

Thereafter, appellant effected a compromise of the suit, and brought this action against respondent to recover the amount paid in settlement of the claim. No issue was made upon the amount paid by appellant in settlement. The appellant bases his right to recover upon the extended coverage clause quoted above, contending that he is entitled to protection under it upon several grounds.

First: It will be noted that clause H of the policy, quoted above, reads:

"Unless otherwise provided by agreement in writing added hereto, this entire policy shall be void in case of transfer or termination of the interest of the Insured, *other than by death of the Insured.*"

This implies that the obligation of the respondent was not necessarily to cease with the death of Mrs. Collins, named insured. The appellant argues from this that the benefits of the policy were available, first, to McVay, the named executor; secondly, to the possible executors, himself and his brother Wallace, in the event of McVay's failure to qualify; and thirdly,

to Wallace, who was to receive the car under his mother's will. The appellant's argument is that, in some way, one or other of these parties would immediately, upon Mrs. Collins' death, be entitled to the benefits of the policy as named insured in her stead.

We are not able to follow the appellant's argument under this head. At the time of the accident, the will had not been probated, nor any personal representative of the decedent appointed. Until the probate of the will and his acceptance of the trust, McVay had no status entitling him to any control over the car. The same is true as to appellant and his brother Wallace, the alternate executors.

As to the right of Wallace, the specific bequest of the car would not be effective to confer upon him any control pending probate of the will. After probate, title vested in the executor, subject to the claims of creditors of the deceased. Title to the car could come to Wallace only through the executor at the close of administration.

"The personalty of the deceased goes primarily to the executor or administrator as assets and not to the heir, and this has been held to be true even though there are no debts, and one claiming the personalty is the sole distributee. The title of an executor or administrator with the will annexed to particular personal property is not affected by the fact that it was specifically bequeathed or has been set aside for the payment of a particular legacy." 23 C. J. 1127.

"It is the settled law of this state that executors and administrators are entitled to the possession and control of the property, both real and personal, of estates while being administered by them, as against heirs and devisees, as well as all other persons. Rem. & Bal. Code, §§ 1366, 1449, 1534; *Gibson v. Slater,* 42 Wash. 347, 84 Pac. 648; *Griffith v. James,* 91 Wash. 607, 158 Pac. 251." *Bishop v. Locke,* 92 Wash. 90, 158 Pac. 997.

█ Second: Appellant next contends that, even, though the permission for the use of the car given by his mother was terminated by her death, as an adult member of her household, the protection of respondent's policy was available to him at the time of the accident. If the household of Mrs. Collins survived her death and continued to exist as an entity in the sense in which the term is used in the extended coverage clause, then the appellant, as a member of it, would be entitled to protection. While the extended coverage clause does not by its terms protect a member of the household using the insured's car, it does protect persons to whom a member of the household, other than a servant or chauffeur, has given permission, and it has been held that the right of a member of a household to give permission to another implies a permission to himself. *United States Fidelity & Guaranty Co. v. Hall*, 237 Ky. 393, 35 S. W. (2d) 550.

Did the household of the named insured, Mrs. Collins, survive her death? The word "household" is defined by the dictionaries and the courts as the members of a house collectively; a domestic establishment, including servants and attendants. The word has been considered as synonymous with the word "family." The word "family" is defined by Webster to be: "The body of persons who live in one house, and under one head or manager." While in a restricted sense the word "family" may be used interchangeably with "household," there is a difference in the ideas suggested by the two words. The word "family" conveys the notion of some relationship—blood or otherwise. In its most common use, the word implies father, mother and children—immediate blood relatives; but the word is also used to designate many other and extended relationships.

On the other hand, the word "household" is defi-

nite in its application. If we speak of the "Adams family," we may have reference to the immediate domestic circle of a particular person of that name, or we may mean all persons of the blood of the second President. If we speak of the "Adams household," however, we can mean only a single domestic establishment whose head is of that name. Our conception of a household involves the existence of a householder as its head, whose personality gives life to that small social unit. Without a householder there is no household. Upon the death of the householder, the house may remain, with its effects and its other members, but it is no longer the household of its former head. Another may succeed to the ownership of the house and its contents, and become the head of a household therein, but it is another household—the household of the successor.

This is the sense, we think, in which the word is used in the extended coverage clause. The policy was written to protect first, Mrs. Collins, and secondly, those to whom she should give permission, directly or through the agency of a member of her household. When she died, her household was at an end. The appellant, it is true, remained in the home after his mother's death, pending the assumption of control by her personal representative, but his occupancy under this condition did not perpetuate the household.

Third: It is next contended by appellant that the permission granted him by his mother in her lifetime was not terminated by her death. But the use was permissive only, terminable at the mother's pleasure. Under well-recognized principles of law, it terminated upon her death.

In the case of *Hobbs v. Cunningham*, 273 Mass. 529, 174 N. E. 181, the court upheld a recovery under conditions somewhat similar to this case, with this vital

distinction, however, that, in that case, an administrator had been appointed, and the operator was using the car with the administrator's permission. As we read the extended coverage clause, to entitle the operator of the car to protection, there must be in existence a named insured from whom would flow permission to operate the car. During her lifetime, Mrs. Collins was the named insured. After the appointment of her executor, he became the named insured. There was no named insured in the interval between her death and the qualification of the executor.

Fourth: The appellant next contends that McVay, the executor, after his qualification as such, ratified appellant's use of the car at the time of the accident, and further, that he had the permission of his brother Wallace, to whom the car was left by the will; this consent being implied from the brother's presence in the car with him. As to McVay's permission, this contention is based upon a letter written by him May 26, 1932, from California, to appellant, in which he said:

"To the end that until I return there may be no question as to your authority to supervise and manage your mother's personal property, and to the end that there may be no embarrassment to you because you have not prior hereto had written authority to do so, you may consider this letter as confirmation of the authority given by me to you to supervise and manage the personal property left by your mother at the home place and elsewhere, not in custody of the bank, to the same extent that I, as executor of your mother's will, would have such authority if I were present in Seattle."

But the rights of the parties here are to be considered as of the time of the accident. Whatever force the letter of the executor might have had as between himself and appellant, it could not impose a liability

upon the respondent which had not existed before it was written.

The appellant is not aided by the fact that he was accompanied at the time of the accident by his brother Wallace. Unquestionably, this would imply permission on the part of Wallace to appellant's use of the car, if permission could be granted. But what we have said with respect to McVay's ratification applies equally to the consent of Wallace. As we have shown earlier in this opinion, his interest in the car at this time was inchoate, and title could only become vested in him through administration of his mother's estate.

In the consideration of the several grounds urged by appellant, we have not overlooked the rule which he invokes to the effect that policies of insurance are to be liberally construed in favor of the object to be accomplished by the insurance, and that their conditions are to be more strictly construed against the insurer, where the terms are uncertain or ambiguous. As our discussion has shown, there is no uncertainty or ambiguity in that clause of the policy under which appellant claims.

The appellant also urges equitable considerations, and argues that, since the premium upon the policy of insurance was paid for the full year, and his use of the car after his mother's death was but a continuation of the practice that had existed when she was living, no additional burden was thrown upon the insurer. But the difficulty with this position is that he is suing upon a written contract, and in order to recover, must bring himself within its terms. We are not permitted, upon general considerations of abstract justice, or in the application of the rule of liberal construction, to make a contract for the parties

356

that they did not make themselves, or to impose upon one party to a contract an obligation not assumed. The judgment must be affirmed.

BEALS, C. J., HOLCOMB, and BLAKE, JJ., concur.

TOLMAN, J., dissents.