Goens, et al. *v.* Arinder, et al.

No. 42838          March 9, 1964          161 So. 2d 509

*William V. Murry,* Hattiesburg, for appellant.

*Lipscomb & Barksdale,* Jackson, for appellee.

McElroy, J.

This case originated in the Circuit Court of Marion County, Mississippi. Plaintiffs filed their declaration against Mr. and Mrs. H. C. Arinder and their daughter, Sylvia, under the wrongful death statute seeking damages for the wrongful death of Donald Ray Goens, 13-year-old son of plaintiffs, Mr. and Mrs. Elwood Goens.

The plaintiffs dismissed as to Mr. and Mrs. H. C. Arinder and proceeded to trial against Sylvia Arinder, sole defendant. The matter was presented to the trial judge without a jury, and he found for plaintiffs in the amount of $10,000. No appeal was taken and judgment became final.

The defendant being insolvent, a writ of garnishment was sued out against State Farm Mutual Automobile Insurance Company, carrier of the insurance on the au-

tomobile of H. C. Arinder. Interrogatories were submitted to the garnishee defendant, who answered admitting coverage of the Arinder vehicle but denying liability, alleging that the vehicle involved in the accident belonged to W. E. Stogner, son-in-law of Mr. and Mrs. H. C. Arinder, a relative and member of the Arinder household within the exclusion contained in the policy relating to non-owned vehicles.

The trial court found for the garnishee defendant.

On October 20, 1958 Mrs. W. E. Stogner had asked her young sister Sylvia to drive the Stogner automobile down the highway (U.S. 98) to a store about one-half mile away and purchase supplies for a birthday party she was giving for her little daughter. On the way Sylvia struck and killed Donald Ray Goens.

At the time of the tragedy the H. C. Arinder family lived on U. S. Highway 98, approximately six miles northeast of Columbia, Marion County, Mississippi, and Mr. and Mrs. Stogner, their daughter and son-in-law, were building a home for themselves a short distance down the highway. At this time the new house had its roof on and walls up, and the Stogners had moved some of their furniture into it. Mr. Stogner was a member of an oil well drilling crew and his father-in-law, H. C. Arinder, the insured, was the driller. His job in Louisiana was completed, and they began a new drilling operation in Smith County, Mississippi. Mr. Stogner and his family spent some time in the home of his parents near Tylertown, Mississippi, but since their new home was nearing completion they set up their bed in one of the bedrooms of the Arinder home so Mr. Stogner could have more time after his regular job to put the finishing touches on the new house. At this time Mrs. Stogner was pregnant and unable to do all of her work, and by being in her parents' home her mother and sister assisted her. The Stogners and Arinders each bought groceries as needed, used the same kitchen, and

when convenient took their meals together. Each used their own washing machine and their own automobile. The Arinder family never used the Stogner automobile except at the request of Mrs. Stogner, and then to perform a mission for her. It was not available to the Arinder household to be used at will or for regular use.

Appellee answered the writ of garnishment denying liability, and in answer to interrogatories propounded by appellant predicated its denial upon its assumption that the Stogner automobile was furnished to the named insured, H. C. Arinder, and/or a relative for regular use; and the further assumption that Mr. and Mrs. W. E. Stogner and their small daughter were residents of the Arinder household.

Appellee does not deny the existence of a valid judgment against Sylvia Arinder, daughter of assured, who at the time of the tragedy was a member of her father's household and a resident thereof. Appellee admitted that the Arinder automobile was covered by its Policy #311 236C1324 at the time of the fatal accident, and in this connection appellee in its answer to Interrogatory No. 4 quoted from the policy as follows:

## "INSURING AGREEMENT II
## NON-OWNED AUTOMOBILES

"Such insurance as is afforded by this policy under coverages A,B,C,D-50,F,G,H and M, with respect to the automobile, applies to the use of a non-owned automobile by the named insured or a relative, and any other person or organization legally responsible for the use by the named insured or relative of an automobile not owned or hired by such other person or organization. Insuring Agreement II does not apply:

(1) to a non-owned automobile (a) registered in the name of the named insured or a relative, (b) hired by or furnished to the named insured or a relative for regular use, or (c) while used in the business or oc-

cupation of such named insured or relative except a private passenger automobile operated or occupied by such named insured, relative, or by his private chauffeur or domestic servant; . . .''

Under "DEFINITIONS — INSURING AGREEMENTS I AND II", a relative is defined as "a relative of the named insured who is a resident of the same household."

Appellee relies upon the exclusions set out in the policy to support its contention of no coverage. However, we have concluded that the above quoted exclusion clause does not exclude coverage of appellants under the State Farm liability policy; and that the policy covered the Stogner car. The automobile being driven by the judgment debtor was a non-owned automobile. But under clause (1)(b) the evidence shows that it was not furnished to "a relative for regular use." Under the definitions clause, Mrs. Stogner was not a "resident of the same household," but only temporarily sojourning or visiting there pending completion of her new home. The pertinent evidence on this issue is examined subsequently in this opinion, and reflects and supports that conclusion.

The word "resident" means one having more than physical presence. The transient visit of a person for a time to a place does not make him or her a resident while there. The word "resident" imports a fixed abode for the time being, as distinguished from a place of temporary abode or a temporary sojourn. 77 C.J.S., pp. 305-307. In the instant case the Stogners were building a home into which they had already moved part of their furniture, and were simply visiting or sojourning for the time being in the Arinder house, until Mrs. Stogner could have a baby and their house was completed. Hence she was not a resident of the Arinder household within the meaning of exclusion clause (1)(b).

State Farm's contention to this effect is contradicted by the facts.

Furthermore, exclusion (1)(a) does not operate to preclude coverage under the policy. The definition clause similarly limits the meaning of the word "relative" in this case to "resident of the same household." And the above observations as to the word "resident" are applicable to preclude application of this exclusion. Hence the insurer's argument that this latter exclusion applies also is without merit.

The record discloses the following facts about the Arinder household. Mr. Arinder had two daughters. Sylvia, sixteen, lived in the home and was provided for and sent to school by her father. Calva Mae, the older daughter, had been married since 1955 to William Earl Stogner and had one child, and she and her family were staying in the Arinder home temporarily while their new house was being built. She and her husband had set up housekeeping about one month after their marriage, and they had lived in several places, including Mr. Stogner's father's home. At the time of the accident they were building a house about 200 yards from the Arinders' house. They had been making numerous trips from the Stogners' home, about 16 miles away, to the new house to work on it. At the suggestion of Mr. Arinder, the Stogners moved into the Arinder home, so Mr. Stogner and Mr. Arinder would have more time to work on the house and so Calva Mae, who was pregnant, would have assistance from her mother and sister in caring for her family. They moved their bed, washing machine and refrigerator into the Arinders' house, and other articles of furniture such as stove, dinette, and bed, and clothing into the partially built new home. The Stogners paid all their own expenses, performed their own household duties, and cooked their own meals. Mrs. Stogner spent most of her time during the day at the new house directing workmen. The Stogners were on

their own, going and coming as they wished. Sylvia had driven the Stogner car two or three times before the date of the accident, but only with the Stogners' permission, and the Stogner car was never at the disposal of the Arinder family. Either the Arinder automobile or Stogner automobile was left at the Arinder home at all times, but only because of Mrs. Stogner's condition and to be used in the event she needed to get to a doctor. Both families considered the Stogners' stay in the Arinder home temporary. The lower court held that the Stogners constituted a separate family, and just happened to be living in the same house as the Arinders.

We now examine whether, under the provisions of the policy, relative Mrs. Stogner was at the time of the accident a member of the insured's household within the purpose and purview of the policy, which defines a relative as "a relative of the named insured who is a resident of the same household." Our conclusion that Mrs. Stogner was not a "resident" of the Arinder household within the terms of the exclusion decides this case, but the authorities defining a "household" are pertinent to describing further a "resident" and to construing the meaning of the exclusion.

The only relevant case in Mississippi other than Caldwell v. Hartford Acc. & Indem. Co., No. 42,891 decided on February 10, 1964, is Fleming v. Travelers' Ins. Co., 206 Miss. 284, 39 So. 2d 885. Fleming was separated from his wife and was living in New Orleans with another woman. The husband Stewart had an automobile liability policy issued by the Travelers' Insurance Company covering his own car. He was not driving his own car at the time of the accident in which the appellant, Fleming, was injured, but was driving a car belonging to his wife. Fleming obtained a judgment against Stewart for her personal injuries, and when Travelers' Insurance Company refused to pay it on the ground that

the car driven by Stewart at the time of the accident was not insured under its policy, Fleming brought suit against the Travelers' to cover the unpaid amount of the judgment against Stewart. The policy held by Stewart on his own car provided: ''It is agreed that such insurance as is afforded by the policy for bodily injury, liability and property damage liability also applies: to the named insured * * * with respect to the operation of any other private passenger automobile by any such insured * * * provided * * * (b) such use is with the permission of any person having the right to grant such permission; and (c) the automobile is not (1) owned in full or in part by or registered in the name of the named insured or any member of the named insured's household * * *.''

It was shown that Stewart and his wife had been estranged for a long time prior to and after the accident. Mrs. Stewart lived in a home in New Orleans, and Stewart lived in open adultry with another woman in an apartment in Mobile. While the Court rightly held that under those facts Mrs. Stewart was not at the time a member of Stewart's household, the importance of the case lies in the fact that the Court spelled out the purpose of the quoted exclusion. In determining whether or not the above quoted exclusion applies, the Supreme Court of Mississippi held that the abstract definition of the term ''household'' is valueless unless it be defined in accordance with the intent and purpose of the word as used in the particular matter under consideration. The Court said:

''At the outset, we must discard popular definitions of the term whose liberal generalities are rarely subjected to technical scrutiny. Nor are those cases controlling which apply a definition which recognizes a mere formal status as sufficient to protect an exemptionist. In seeking to expand the meaning to include many diverse situations, the courts have, without perfect con-

sistency, solved their dilemmas by such tests as the fact or obligation of continual support, housing under a single roof, actual dwelling together, absence animo revertendi; constructive presence or actual absence. . . .

"We are dealing with a contract of insurance. We must inquire what the parties thereto meant. Practical considerations must be given play, interpreted in the light of the purpose of the policy provision. This provision has been repeatedly held to reveal an obvious purpose to avoid a multiple coverage of several vehicles owned by members of the same family, who, by their close intimacy, may be expected to use the cars of each other without hindrance and with or without permission, thus increasing the liability of the insurer who has a right to expect each owner to contract for his own coverage. Concession is made to the casual permissive use by the insured of vehicles of other persons, whose permission may be considered episodic or not subject to abuse."

The following judicial definitions of the word "household" are taken from 19 Words and Phrases (perm. ed.) 699, 700, 701-702:

"The term 'household' includes all the dwellers in a house under the common control of one person. In re Lambson, 14 Fed. Cas. 1047, 1048."

"Term 'household', in omnibus clause of automobile liability policy covering other members of assured's household, means those who dwell under the same roof and compose a family. Andrews v. Commercial Casualty Ins. Co., 259 N.W. 653, 128 Neb. 496."

" 'Household', as used in provision in automobile liability policy extending benefits of policy to members of insured's household, meant single domestic establishment, including servants and attendants with householder at its head, and, upon death of householder, household ended. The word 'household' is defined as members of a house collectively; a domestic establishment,

including servants and attendants; and has been considered as synonymous with the word 'family', which is defined as a body of persons who live in one house, and under one head or manager. While in a restricted sense the word 'family' may be used interchangeably with 'household', there is a difference in the ideas suggested by the two words. The word 'family' conveys the notion of some relationship, blood or otherwise. In its most common use, the word implies father, mother, and children, immediate blood relatives; but the word is also used to designate many other and extended relationships. On the other hand, the word 'household' is definite in its application. . . . Our conception of a household involves the existence of a householder as its head, whose personality gives life to that small social unit. Without a householder, there is no household. Upon the death of the householder, the house may remain, with its effects and its other members, but it is no longer the household of its former head. Another may succeed to the ownership of the house and its contents, and become the head of a household therein, but it is another household, the household of the successor. Collins v. Northwest Casualty Co., 39 P. 2d 986, 989, 180 Wash. 347, 97 A.L.R. 1235.''

''Former roomer and boarder of automobile liability assured who, after losing regular employment, had continued to spend half of her time at assured's home without paying board, being treated as member of family group, sharing in their daily tasks and enjoying social intercourse of domestic circle, held person in assured's 'household' within provision of policy excluding such persons from coverage of policy. Term 'household' as used in policy is not limited to persons related by blood or marriage and has not the same meaning, but is given its customary meaning of a number of persons who dwell together as a family. State Farm Mut. Automobile Ins. Co. v. James, C.C.A. W. Va., 80 F. 2d 802, 803.''

"Provision in automobile liability policy excepting 'accidents to members of assured's household including domestic or household servants' held to include insured's brother, who was member of insured's household of which mother was the head. A 'household' being a group of persons living together. Cartier v. Cartier, 153 A. 6, 84 N.H. 526.''

35 C.J.S., Family, § 56, p. 937 states:

"The word 'family' is further defined to mean a collective body of persons, consisting of parents or children, or other relatives, domestics, or servants, residing together in one house or upon the same premises; a collective body of persons, who form one household, under one head and one domestic government, and who have reciprocal natural or moral duties to support and care for each other; such persons as habitually reside under one roof and form one domestic circle, or such as are dependent on each other for support, or among whom there is a legal or equitable obligation to furnish support; those, who live under the same roof with the pater families, who form his fireside; an entire household; a household; . . .''

Hoff v. Hoff, 132 Pa. S. 431, 1 A. 2d 506, is a case very much in point. The opinion of the court stated:

"Appellants in these two cases are husband and wife, who were plaintiffs in an action of trespass against the father of the husband for personal injuries sustained by the wife as a passenger in an automobile driven by the father. * * *

"The policy insured defendant against claims for bodily injury or death resulting therefrom 'accidentally inflicted upon any person or persons excepting agents, members of the assured's family * * *,' and some other classifications here immaterial. The policy contained this further definition: '* * * member of assured's family shall be defined as any person residing in the same household with the assured and related to him by

blood or marriage and shall also include regardless of
their place of residence those related to the assured as
follows: husband, wife, father, mother, son, daughter,
brother or sister.'

''The evidence was uncontradicted that plaintiffs, their
six-year-old son, and the parents of husband plaintiff
occupied one dwelling house of six rooms, which was
owned by defendant. The first floor of the house con-
sisted of a front living room, dining room, and kitchen;
between the living room and dining room there was a
small sitting room, separated from the dining room
by only a large archway. The dining room also opened
through French doors upon a porch. The upper floor
consisted of front, center and back bedrooms, and a
bathroom.

''Plaintiffs and their child came to live at the house
in 1932, several months prior to the accident, bringing
their own furniture, and occupying the living room, front
and center bedrooms, which were furnished with their
furniture, except defendant's piano which remained in
the living room. This living room was separated by
French doors from the rest of the house, and had its
own entrance from the vestibule. The other rooms were
used and furnished by defendant and his wife. The
kitchen and bathroom were necessarily used by all in
common. Usually, separate meals were prepared and
served by defendant's wife for defendant and herself,
and by wife plaintiff to her husband, her son, and her-
self. At times plaintiffs' meals were served on the sun
porch. Occasionally one meal was served for all in-
discriminately. Wife of plaintiff did most of the house-
work in return for plaintiffs' occupying their rooms
rent free. The two grocery accounts were kept separate.
The telephone, electricity, and gas service bills were
arbitrarily divided in half between defendant and his
son, but the latter paid for the extra telephone listing.
Their milk was bought from different dairies. The pro-

visions, kitchen utensils, and dishes were separated; there were radios in both living rooms; there were two telephones having the same number, and two sets of laundry equipment and cleaning equipment. There were separate and distinct libraries, plaintiffs having theirs in the front bedroom, and defendant having his in his living room and in the hall on the first floor. Plaintiffs entertained their guests in their own rooms, using their own utensils and dishes.

"On this testimony the question whether plaintiffs were members of defendant's household was given to the jury in each case, and in each case a verdict was rendered for the plaintiff against the garnishee. The court, however, in each case granted garnishee's motion for judgment n.o.v., and these appeals followed.

"The question here involved is whether plaintiffs, at the time of the accident, on July 7, 1933, were persons residing in the same household with defendant, who was the assured. In its opinion granting garnishee's motions for judgment n.o.v., the court below stated: 'It is urged on the behalf of the plaintiff that on account of the manner in which the details of the domestic economy of this household were worked out, the relationship amounted to two households occupying the same one family house. How can this be possible? It seems that the picture presented by the intimate details given us by Franklin Hoff is just 'the young folks' coming home to live with the 'old folks' and both taking wise precautions to avoid the bickerings which so often arise under similar circumstances when such precautions were not taken. Webster defines household 'those who dwell under the same roof and compose a family' and here we have father and mother, son and daughter-in-law and grandson, certainly a family in the usual sense of the word dwelling together under the same roof and in a typically one family house.

"Had plaintiffs and their son on the one hand, and defendant and his wife on the other continued to live in separate houses or apartments, they, without doubt, would have constituted two families or two households notwithstanding their relationship. Each group would have been a distinct and separate domestic establishment with its own head. When these two families arranged to live in one dwelling the result was not necessarily the creation of one household. The term 'household' is generally recognized as somewhat broader in its implication than the term "family." It is possible that those constituting a family may become a part of another's household, although the words 'family' and 'household' are often interchangeably used. See 2 Words and Phrases, Household, Second Series, p. 919. Cf. State Farm Mutual Automobile Ins. Co. v. James, 4 Cir., 80 F. 2d 802.

"* * *

"Neither relationship nor the presence of all the parties within one dwelling is the determining factor, but rather the existence of such domestic arrangements and circumstances as would create separate domestic establishments, each having its own head and separate management. Sole control of the entire dwelling by husband plaintiff was not necessary in order that it might be the abode of his own household; nor did the fact that defendant owned the dwelling in which plaintiffs and their son resided, and in which defendant and his wife also lived, make him the head of a household which included plaintiffs and their son, as contemplated by the terms of defendant's policy. Plaintiffs furnished and controlled their own rooms; their family life functioned separately and apart from that of defendant and his wife; they made their own purchases of provisions and other necessities, and separately maintained themselves; they used their own utensiles and household equipment; they entertained their guests in the same manner

as they would if they had lived separate and apart from defendant. * * * In our opinion, under the facts, it cannot be held as a matter of law that plaintiffs were 'residing in the same household with the assured (defendant).' '' Cf. Giokaris v. Kincaid, 331 S.W. 2d 633 (Mo. 1960); Isaac Island v. Fireman's Fund Indem. Co. et al., 30 Cal. 2d 541, 184 P.2d 153, 173 A.L.R. 2d 896; Moore Shipbuilding Corp. v. Industrial Acc. Comm., 185 Cal. 200, 196 P. 257, 13 A.L.R. 676; Lumbermen's Mut. Cas. Co. v. Pulsifer, DC, 41 F. Supp. 249.

Most of the cases cited in the instant case involve homes where a mother, separated or a widow, or brother, uncle or aunt have come to live with the intention of becoming a part of the household, having no definite plan to go into any other residence.

The words "residence", "family", and "household" can not be satisfactorily defined as abstract terms. Definition by lexicographers supplies elements which are seized upon by opposing interests and isolated from other factors which furnish material relevant to contradictory conclusions. Practical consideration must be given play, interpreted in the light of the purpose of the policy provision.

It is an anomolous situation to think that a husband, wife and child automatically become a member of their parents' household because they, while building a home into which they have already moved part of their furniture, move their bed, refrigerator and washing machine into the parents' house and stay there temporarily. Certainly Mr. Stogner never ceased to be head of his own family. They were using their own bed, preparing their own meals and paying for their food, clothing and other needs. They were constantly going to the new home to get clothing. Such conduct certainly shows there was no permanency in the arrangement. Webster defines "residence" as "a place usually implying more or less permanence of abode, but is often distinguishable

from inhabitant as not implying as great flexibility or permanence of abode.'' Webster's New International Dictionary (2d ed.).

We are of the opinion that the Stogners' stay in the Arinder home was no more than a visit or sojourning for the time being until Mrs. Stogner could have her baby and until their house was completed. This was of course temporary, and the proof shows that they did move into the home when these two events had taken place.

It is our opinion as a matter of law that the Stogners can not be held to be members of the household of Mr. Arinder, the assured. Even though the lower court decided the case in favor of the insurance company, it did not hold that the Stogners were a part of the Arinder household. We believe assured's policy covered the Stogner car in this instance, because Sylvia, a member of assured's household, was driving a car belonging to a relative not a resident of the same household.

We are of the opinion that the learned circuit judge erred in finding for the insurance company and in dismissing the writ of garnishment, and appellant is entitled to recover on the policy in the sum of $10,000, with interest thereon from the date of judgment, December 15, 1961.

Reversed and judgment rendered here for appellant.

All Justices concur in the reversal and judgment rendered here for appellant.

GILLESPIE, J., concurring:

I concur in the result reached by the majority. The majority opinion correctly holds that Mrs. W. E. Stogner, Jr., to whom the non-owned automobile was furnished for regular use, was not a "resident" of the Arinder household. The majority seems to place the decision solely on the ground that Mrs. Stogner was temporarily visiting or sojourning in the Arinder household, and,

therefore, was not a resident of the Arinder household. I am of the opinion that this is correct, but I think the opinion should stop there. It needlessly discusses the term "household". In my opinion, it is not necessary to determine the meaning of "household" in order to determine whether Mrs. Stogner was a resident or a visitor in the home of her father and mother. The discussion of the term "household" serves no purpose, and I am unable to agree with that part of the opinion.

PATTERSON, J., joins in this opinion.