Floyd **HARDESTY**, Administrator of the Estate of Allie Pesterfield, deceased, and Ivera Weaver, surviving next of kin of Jimmy Darrel Hamblin, deceased, and for the use and benefit of the Estate of Jimmy Darrel Hamblin, Appellants,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign insurance company, Appellee.**

No. 7969.

United States Court of Appeals Tenth Circuit.

May 19, 1966.

Rehearing Denied June 23, 1966.

Frederick A. Smith, Truth or Consequences, N. M., for appellants.

Joseph A. Sharp, Tulsa, Okl., for appellee.

Before MURRAH, Chief Judge, LEWIS and SETH, Circuit Judges.

MURRAH, Chief Judge.

This litigation involves the liability of appellee insurance company under one of its automobile policies for two personal injury suit judgments against the minor son of the insured, F. J. Ennis, Sr.

The policy obligated the company to pay all losses within specified limits which the insured would become legally obligated to pay because of bodily injuries sustained by other persons caused by accidents arising out of the ownership and maintenance of the insured automobile. The term "insured" expressly includes "(1) the named insured and also * * * (2) his relatives". And, "Relative—means a relative of the named insured who is a resident of the same household."

The crucial question as agreed in pretrial is whether at the time of the accident resulting in the judgments the son was a member of the insured father's "household" as that term is used in the policy to delineate coverage. For the purpose of determining that question it was agreed that the son resided at 6827 North Trenton, Tulsa, Oklahoma, and the court ruled that the question whether the son was a member of his father's household was a question of fact.

The policy recited on its face that the insured's residence was 6827 North Trenton, Tulsa, Oklahoma, but he apparently maintained and frequently occupied another house nearby. In support of the contention that his household was the Trenton Street place there was testimony to the effect that at the time of the accident the insured was the father of two daughters and one son, F. J. Ennis, Jr., of whom he had custody by divorce decree. One of the daughters was married and sometimes stayed at the Trenton Street house with her husband. He also had two unmarried sisters who lived there. All of the utilities were in his name, and the bills were usually paid by him. He was registered to vote from that address, received his mail there, and was listed in the telephone directory there. He paid part of the grocery bill and ate all of his cooked meals either at the Trenton Street house or at a café. He took his lunch to work and picked it up each morning at the Trenton Street house where it was prepared either by himself or by one of his sisters.

The case was submitted on special interrogatories in which the jury was specifically asked to answer: "Was the residence at 6827 North Trenton in Tulsa, Oklahoma, on January 27, 1962 [the date of the accident] the household of F. J. Ennis, Sr.?" In that connection the jury was instructed that under the law of the state of Oklahoma in order " * * * for a place to be the household of one there must be therein a dwelling together as a family and said household must be supported by and under a single head or management. In other words, persons who dwell together as a family constitute a household." And, "a person can have more than one household provided each household meets the above test."

This is undoubtedly the law of Oklahoma. See Indemnity Insurance Co. of North America v. Sanders, 169 Okl. 378, 36 P.2d 271. And, it is the law generally as the term "household" is used in insurance contracts. See Collins v. Northwest Casualty Co., 180 Wash. 347, 39 P.2d 986, 97 A.L.R. 1235; State Farm Mutual Automobile Insurance Co. v. James, 4 Cir., 80 F.2d 802; Johnson v. State Farm Mutual Automobile Insurance Co., 8 Cir., 252 F.2d 158.

The appellant requested the court to additionally instruct the jury that the home of an aunt " * * * may constitute a common household for an unmarried father and his minor son of whom he has custody by divorce decree even though the father and his child have no right to strict dominion or control over it." The court declined to so instruct the jury on the ground that it was not the law.

In the course of its deliberations the jury asked the court for a further definition of "management"—"Could this be more than one person?" Before the jury was called into court for an answer to its question, the court indicated to counsel that the " * * * definition requires single head and single management, and we'll answer the question that way." The plaintiffs' attorney objected to the answer " * * * unless the jury is fur-

ther advised that one house may have in it two households and that under the evidence that has been submitted and under the instructions specifically in line with the case of Fay v. [John] Waldron [Corporation] [117 N.J.L. 123, 187 Atl. 140], we have proven that it is possible to have two households in the Trenton Street house in the case." The judge was "surprised" and stated, "Your position all along has been the Trenton Street house was the household of Ennis, Sr., one of his two households." The jury was then recalled and told the answer to its question was "no" and that "The requirement is that a household must have a single head and a single management, and that's what the definition says." The jury was further told that management is " * * * a word of common understanding and common usage and it has no particular legal definition." The jury answered the interrogatory in favor of the defendant and judgment was entered thereon.

 The jury's inquiry as to the meaning of the word "management" clearly indicated its concern whether the insured could have a household at the Trenton Street place even though he was not the single head and single manager of the house. The total effect of the court's ruling was to leave the jury with the unmistakable inference that there could be but one household at the Trenton Street place and for it to be the insured's, he must be the single head or manager of it. We think this inference was erroneous and had the effect of persuading the jury to conclude that the insured did not maintain a household at the Trenton Street place. The requested instruction abstractly states applicable law, and the appellant was entitled to have the jury told in substance that the insured not only could legally maintain more than one household, provided he was the head or manager of each, but that one of his households could have been located at the Trenton Street place separate and apart from his sisters' even though he had no exclusive dominion or control over the house, i. e. see Fay v. John Waldron Corporation, supra.

This leaves for consideration the further issue whether, if the jury should find that the insured did maintain a household at the Trenton Street place, his son was a resident of it or the household of the aunts. In that regard there is strong and cogent evidence tending to show that as a resident of the Trenton Street place, the son was a member of his aunts' household and not his father's. The sufficiency of the contradictory evidence to go to the jury on this point is a matter which we leave to the trial court in the first instance on remand.

The case is accordingly reversed and remanded for proceedings in accordance with the views herein expressed.