IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| BRENDA WELCH, | No. 85466-6-I |
| Appellant, | DIVISION ONE |
| v. | |
| PEMCO MUTUAL INSURANCE COMPANY, a domestic insurance company doing business in Washington, | UNPUBLISHED OPINION |
| Respondent. | |

BOWMAN, J. — PEMCO Mutual Insurance Company denied Brenda Welch insurance coverage for loss incurred after her ex-husband assaulted her and burned down their former marital home. PEMCO determined that the loss was intentional and rejected Welch's argument that the loss arose from an act of domestic abuse, an exception to the intentional loss exclusion. Welch sued PEMCO for breach of contract, bad faith, and violations of the Consumer Protection Act (CPA), chapter 19.86 RCW, and the Insurance Fair Conduct Act (IFCA), RCW 48.30.010 to .015. The trial court dismissed Welch's claims at summary judgment. Because Welch meets the domestic abuse exception to the intentional loss exclusion, we reverse summary judgment for PEMCO, direct the court to enter partial summary judgment for Welch for breach of contract, and remand for further proceedings.

FACTS

Welch and David Morgan married in 2006. Welch owned a home in Lynnwood, and the couple lived there throughout their marriage. The home was subject to a mortgage[1] held by CitiMortgage Inc. ISAOA ATIMA.[2] During their marriage, Welch and Morgan had one child together, K.W.

In 2013, the parties separated, and Welch petitioned for divorce. Welch explained that she sought a divorce because Morgan was "controlling" and "verbally very abusive." On May 21, 2014, the court finalized their divorce, awarding Morgan the family home and requiring that he "either sell the property or refinance the debts into his sole name within three (3) years of February 25, 2014."[3] After the divorce, Welch met a new partner and moved in with him. Still, Welch and Morgan shared custody of K.W., and their parenting plan called for joint decision-making.

On November 16, 2014, Welch went to the Lynnwood home at a prearranged time to pick up K.W. from Morgan's care. But K.W. was not there. Instead, Morgan attacked Welch, beat her unconscious, doused her in gasoline, and set her and the house on fire. Welch survived but suffered significant mental and physical injuries. The fire destroyed the house.

---

[1] The home was also subject to a second mortgage held by JPMorgan Chase Bank NA (Chase). Chase's second mortgage interest was not insured under the policy. After the fire, Chase forgave the debt owed under its loan and released its lien on the property.

[2] CitiMortgage sold the mortgage debt to Ditech Financial LLC. For simplicity, we refer to only CitiMortgage.

[3] The court also awarded Welch a judgment of $1,617, a lump sum of $37,500, half of Morgan's retirement accounts, and $1,000 monthly for child support.

At the time of the fire, Morgan had not yet sold or refinanced the Lynnwood home. So, the deed still named Welch as an owner and obligor on the mortgage. Welch and Morgan held an all-risk insurance policy on the property through PEMCO. The policy named both Welch and Morgan as insureds. It also listed CitiMortgage as a mortgagee.

The PEMCO policy excluded coverage for "any loss arising out of any act committed by or at the direction of an insured with the intent to cause a loss." But it has an exception to that intentional loss exclusion for acts of "domestic abuse,"[4] which provides that the exclusion "will not apply to deny an insured's claim for an otherwise covered property loss if such loss is caused by an act of domestic abuse by another insured under the policy."[5]

The policy defines "domestic abuse" as "[p]hysical harm, bodily injury, assault or the infliction of fear of imminent physical harm, bodily injury or assault between family or household members," and "[i]ntentionally, knowingly or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another family or household member." But it does not define "family" or "household member." The policy limits claims under the domestic abuse exception to "that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured

---

[4] The policy also includes a "Lenders Loss Payable Endorsement," which provides that PEMCO will pay CitiMortgage for its interest even if there is no coverage for the named insureds under the policy.

[5] The exception also requires that "the insured making claim . . . (1) [f]iles a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse; and (2) [d]id not cooperate in or contribute to the creation of the loss."

interest in the property." And it says that "[i]n no event will [PEMCO] pay more than the limit of liability."

In 2016, a jury found Morgan guilty of attempted first degree murder domestic violence and first degree arson domestic violence. The trial court sentenced him to 260 months in prison. Welch then sued Morgan for her injuries from the assault. Morgan did not respond, and the trial court entered a default order and judgment against Morgan for $5.06 million.[6] Welch also claimed coverage under the PEMCO policy. And CitiMortgage claimed coverage for the outstanding balance on the mortgage. PEMCO estimated the repair or replacement cost of the damage to the home was $463,732.82.

In June 2016, PEMCO found coverage for CitiMortgage. In a letter explaining its decision, PEMCO cited the Lenders Loss Payable Endorsement that covers CitiMortgage's interest under the policy "*despite* any act of the named insured which might invalidate the insurance" as to the named insureds. But PEMCO denied Welch's claim. It explained that the intentional loss provision "precludes coverage not only to the arsonist but to any insured, including Ms. Welch."

In May 2019, Welch sued PEMCO for breach of contract, bad faith, and violations of the IFCA and CPA. The case was assigned to Snohomish County Superior Court Judge Anita Farris. In November 2019, PEMCO moved for partial summary judgment dismissal of Welch's breach of contract and IFCA violation claims. It argued that the policy's intentional loss exclusion precluded coverage.

---

[6] Welch executed on the judgment in 2019 by purchasing the Lynwood property at a sheriff's sale.

4

And it argued that the domestic abuse exception to the exclusion does not apply because Welch and Morgan were no longer family or household members since their divorce. It also argued that even if the domestic abuse exception covered Welch's claim, PEMCO paid her "insurable interest in the property" when it satisfied the CitiMortgage debt. PEMCO reasoned that because the divorce order awarded Morgan the property, Welch's insurable interest was limited to only the outstanding mortgage debt at the time of the fire.

Welch responded that the domestic abuse exception covered her claim. She urged the court to define "family" to include former spouses with children in common consistent with domestic violence statutes. She also argued that her insurable interest was for the full cost of repairs, and that PEMCO should be estopped from arguing otherwise because it did not cite a limited insurable interest when it denied coverage. In February 2020, Judge Farris heard argument on PEMCO's partial summary judgment motion and took the matter under advisement.

Welch also moved for partial summary judgment on her breach of contract claim in July 2020. She argued she was entitled to coverage under the domestic abuse exception to the intentional loss exclusion. She also raised her estoppel argument about the extent of her insurable interest.

On August 10, 2020, having not received a ruling on its motion, PEMCO filed a notice of disqualification, asserting it could not receive a fair trial before Judge Farris. Then, two days later on August 12, the court issued an order ruling on PEMCO's motion for summary judgment. Judge Farris dated the order on

5

April 24, 2020. In a letter attached to the order, the court explained to the parties that the filing delay resulted from an error in "remote electronic order processing" that occurred when the court first moved to remote processing during the COVID-19 emergency.

Substantively, the court granted in part and denied in part PEMCO's motion. The court denied PEMCO's motion on the applicability of the domestic abuse exception. It found the term "family" undefined and ambiguous and determined that the term should be construed against PEMCO. But it granted PEMCO's motion on Welch's insurable interest. And it rejected Welch's estoppel claim, concluding that "her insurable interest is limited to whatever she was owed pursuant to the Dissolution Decree at the time of the covered incident."

On August 18, 2020, Welch asked PEMCO if, despite its pending notice of disqualification, it would agree to have Judge Farris hear Welch's motion for partial summary judgment. PEMCO agreed that Welch's "motion can be set to be heard by Judge Farris, since she is already familiar with some of the issues." And PEMCO said that "[t]he motion to change judge has been stricken."[7]

PEMCO opposed Welch's motion for partial summary judgment. It argued that the court already determined there was a genuine issue of material fact about whether Welch and Morgan were family members, and that PEMCO was

[7] A day earlier on August 17, PEMCO apparently sought to confirm the hearing date for the notice of disqualification with the superior court's confirmations department. Because the hearing was set on Judge Farris' individual calendar, the confirmations clerk informed PEMCO's attorney that he must confirm the date with the judge's law clerk. But PEMCO did not contact Judge Farris' law clerk to confirm the hearing date. Instead, it sent her law clerk a copy of the August 18, 2020 email stating that PEMCO struck its notice of disqualification.

6

not estopped from arguing limited coverage based on Welch's insurable interest. PEMCO did not address disqualification.

On October 16, 2020, the court heard Welch's motion for partial summary judgment. PEMCO again did not raise disqualification. At the end of the hearing, the court took the matter under advisement. Then, on December 1, 2020, the court issued an order on Welch's motion. The court incorporated by reference its finding that the term "family" is ambiguous from its ruling on PEMCO's motion for partial summary judgment. The court then construed the term against PEMCO and determined that "as a matter of law [Welch] falls within the domestic abuse exception in the policy because she falls within the undefined ambiguous term family." And it concluded that PEMCO "breached the policy by denying coverage on the basis Ms. Welch did not fall within that definition [of domestic abuse assault]."

The court also reconsidered its ruling on Welch's insurable interest. It determined that there was an issue of fact as to whether PEMCO is equitably estopped from asserting that Welch "has no or a limited insurable interest." And it again determined that "the extent of Ms. Welch's insurable interest is the extent to which the home was to act as security" for what Morgan owed her under the dissolution decree. But it did not determine what that amount was.

Three months after receiving the adverse ruling, PEMCO moved to enforce its August 10, 2020 disqualification notice and asked Judge Farris to vacate all her previously issued orders under RCW 4.12.040 and .050. PEMCO argued that Judge Farris lacked authority to hear motions or enter rulings after

PEMCO filed its disqualification notice in August 2020. Welch objected, arguing that PEMCO agreed to strike its notice and thus waived any right to disqualify Judge Farris.

On April 12, 2021, Judge Farris granted PEMCO's motion to enforce disqualification, recused herself from the case, and vacated all her previously issued orders. She found that PEMCO likely engaged in "gamesmanship" when deciding whether to enforce disqualification. Still, Judge Farris concluded that the notice of disqualification took effect from the time PEMCO filed it in August 2020. Judge Farris acknowledged that PEMCO's email clearly waived the disqualification as to Welch's partial motion for summary judgment. But she concluded that PEMCO's and Welch's motions for summary judgment were so intertwined that she could not separate the rulings.

In May 2021, the case was reassigned to Judge Bruce Weiss. Both PEMCO and Welch renewed their motions for partial summary judgment. PEMCO again argued that the intentional loss exclusion precludes coverage, that the domestic abuse exception did not apply because Welch and Morgan were not family, and that even if coverage were not excluded, PEMCO already paid Welch's insurable interest. And Welch again argued that the domestic abuse exception applied, and that PEMCO should be equitably estopped from seeking to limit her insurable interest.

This time, the court granted PEMCO's motion and denied Welch's. It dismissed the breach of contract claim, determining that because Welch and Morgan were no longer married or living together, Welch and Morgan were not

family, so the domestic abuse exception to the intentional loss exclusion did not apply. It also determined that Welch failed to show PEMCO was estopped from asserting she had a limited insurable interest. The court concluded that Welch's only insurable interest was the outstanding mortgage debt, which PEMCO satisfied when it paid the mortgage holder. It also concluded that "there is insufficient evidence to support the claim that PEMCO unreasonably denied the claim for coverage," and dismissed Welch's IFCA claim.

In August 2021, Welch moved for reconsideration, which the court granted in part and denied in part. The court affirmed its dismissal of Welch's breach of contract claim, but it concluded there were issues of material fact about Welch's equitable estoppel argument and IFCA claim and reinstated those claims. Then, in early 2023, the court invited the parties to move for reconsideration or clarification about coverage. So, Welch moved for partial summary judgment and for reconsideration. PEMCO also moved for partial summary judgment. This time, the court vacated its prior rulings, but again determined there was no coverage. In May 2023, Judge Weiss entered orders dismissing all of Welch's claims.

Welch appeals

## ANALYSIS

Welch argues that Judge Farris erred by disqualifying herself and vacating her prior orders. She asks that we reverse Judge Farris' ruling on disqualification and reinstate her orders. In the alternative, Welch argues that Judge Weiss erred by granting summary judgment for PEMCO.

1. <u>Disqualification</u>

Welch argues that Judge Farris wrongly disqualified herself and vacated her prior orders because PEMCO did not timely file its notice of disqualification. We agree but conclude that Welch shows no prejudice from the disqualification.

Disqualification of a single judge without a showing of prejudice is a right granted to parties by statute. *Garza v. Perry*, 25 Wn. App. 2d 433, 443, 523 P.3d 822 (2023). We review issues of statutory construction de novo. *Id.* When engaging in statutory interpretation, our goal is to determine and carry out the legislature's intent. *Fode v. Dep't of Ecology*, 22 Wn. App. 2d 22, 30, 509 P.3d 325 (2022). So, when interpreting a statute, we first look to its plain meaning. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009). " 'A statute that is clear on its face is not subject to judicial construction.' " *City of Seattle v. Kopperdahl*, 22 Wn. App. 2d 708, 711, 513 P.3d 139 (2022) (quoting *State v. J.M.*, 114 Wn.2d 472, 480, 28 P.3d 720 (2001)). Instead, "we assume the legislature meant exactly what it said and apply the statute as written." *Id.* If we determine a statute is unambiguous after considering its plain meaning, our inquiry ends. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

Under RCW 4.12.050(1)(a), a party may disqualify a judge from hearing a matter by filing a notice of disqualification "before the judge has made any discretionary ruling in the case." If a party timely disqualifies a judge, that judge cannot hear or try any action or proceeding in the case. RCW 4.12.040(1). The party filing a notice of disqualification need not show actual prejudice. *Godfrey v.*

*Ste. Michelle Wine Ests. Ltd.*, 194 Wn.2d 957, 961, 453 P.3d 992 (2019).

" '[O]nce a party timely complies with the terms of RCW 4.12.050, prejudice is deemed established,' " and the disqualified judge " 'is divested of authority to proceed further into the merits of the action.' " *Pub. Util. Dist. No. 1 of Klickitat County v. Walbrook Ins. Co.*, 115 Wn.2d 339, 343, 797 P.2d 504 (1990)[8] (quoting *Marine Power & Equip. Co. v. Industr. Indem. Co.*, 102 Wn.2d 457, 460, 687 P.2d 202 (1984)).

Here, PEMCO filed a notice of disqualification on August 10, 2020. But Judge Farris made a discretionary ruling on PEMCO's motion for summary judgment on April 24, 2020, more than three months before PEMCO filed its notice. Under the plain language of the statute, PEMCO's notice of disqualification was untimely.

Citing *Malott v. Randall*, 83 Wn.2d 259, 517 P.2d 605 (1974), PEMCO argues that its notice of disqualification was timely because it filed the notice before Judge Farris "made" a ruling under RCW 4.12.050(1)(a). According to PEMCO, a ruling is not "made" until it is filed.

In *Malott*, our Supreme Court held that a judgment was not "formally entered" under CR 58 where a judge signed the judgment, but a deputy clerk placed it in a desk drawer rather than filing it. 83 Wn.2d at 261-62. This is because a judgment is "entered" from "the time of delivery to the clerk for filing." CR 58(b). But a notice of disqualification is not a judgment governed by CR 58. Instead, it is a rule created by statute. And RCW 4.12.050(1)(a) provides that a

---

[8] Alteration in original; internal quotation marks omitted.

party may disqualify a judge by filing a notice of disqualification before the judge has "made" any discretionary ruling in the case. Had the legislature intended that a judge must *file* a discretionary ruling before it is "made," it would have said so in the disqualification statute.

As much as PEMCO suggests such a rule is unfair or violates due process, it is incorrect. In *State ex rel. Haskell v. Spokane County District Court*, 198 Wn.2d 1, 10, 491 P.3d 119 (2021), our Supreme Court held that a defendant's notice of disqualification was untimely even though the defendant was unaware that the court had made a discretionary ruling. There, the State petitioned the superior court ex parte for a writ of review of a district court decision. *Id.* at 7. The defendant was not notified of the hearing where the State presented the writ. *Id.* Nor was defense counsel contemporaneously advised of which superior court judge would preside over the ex parte proceedings. *Id.* The court granted the writ. *Id.* Days later, the defendant filed a notice to disqualify the judge. *Id.* The court denied the notice of disqualification as untimely because it already made a discretionary ruling. *Id.* Our Supreme Court affirmed. *Id.* at 9-10. It concluded the court made a discretionary ruling when it granted the writ of review, and it did not matter that the defendant had no notice of the ruling. *Id.* at 10-11. The court determined that the lack of notice did not implicate due process because the right to disqualify is statutory, not constitutional. *Id.*

Because PEMCO filed its notice of disqualification after Judge Farris made a discretionary ruling, the notice was untimely, and RCW 4.12.050 did not

12

require Judge Farris to recuse.[9]  Still, Welch fails to show that she was prejudiced from the disqualification.

The Ninth Circuit has rejected the argument that improper recusal is reversible error on appeal.  In *In re Cement Antitrust Litigation*, 688 F.2d 1297, 1299-1300 (9th Cir. 1982),[10] the trial judge recused himself from a class action lawsuit against private cement producers because his wife owned shares of stock in some of the class members.  The judge recused under the mistaken impression that federal statute required it.  *Id.* at 1300.  On appeal, petitioners sought a writ of mandamus directing the trial judge to vacate his order of recusal.  *Id.*  The Ninth Circuit determined that "when a trial judge enters an order granting a motion for disqualification[,] the error, if any, cannot serve as a basis for reversal on appeal."  *Id.* at 1302.  It explained:

> A party cannot ordinarily predicate a claim of prejudicial error on the fact that he was required to try his cause before one judge who was duly qualified to preside rather than another.  Prejudicial error does not occur simply because a particular judge fails to handle a case or some other judge does; the mere assignment of a matter to a judge does not affect the outcome of the case.  It is the conduct of the judge in conducting the proceeding that gives rise to error which is prejudicial and requires reversal, not the assignment of the case to the judge.

*Id.*  So, the Ninth Circuit determined that "despite the fact that an erroneous order of recusal may cause collateral injury to the party, the error is harmless."  *Id.*

We agree with the Ninth Circuit's reasoning.  Indeed, the basic requirement of due process is only " '[a] fair trial in a fair tribunal.' "  *Cronin v.*

---

[9] Because we conclude PEMCO did not timely file its notice of disqualification, we do not address Welch's argument that PEMCO later waived disqualification.

[10] *Aff'd*, 459 U.S. 1191, 103 S. Ct. 1173, 75 L. Ed. 2d 425 (1983).

*Cent. Valley Sch. Dist.*, 23 Wn. App. 2d 714, 760, 520 P.3d 999 (2022)[11] (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955)).  And we "presume that judicial hearings and judges are fair."  *Id.*  Welch does not show that Judge Farris' disqualification from her case deprived her of a fair process or decision-maker.

Still, Welch suggests that the disqualification prejudiced her because Judge Farris ruled in her favor and Judge Weiss did not.  But Welch cites no authority in support of her suggestion that she has a right to a particular interlocutory ruling.  *See DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) (where a party cites no authority in support of a proposition, we "may assume that counsel, after diligent search, has found none").  In any event, Judge Farris' rulings on partial summary judgment did not amount to a final judgment on the merits.  And "an order which adjudicates fewer than all claims or the rights and liabilities of fewer than all parties is subject to revision at any time before entry of final judgment as to all claims and the rights and liabilities of all parties."  *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 300, 840 P.2d 860 (1992); CR 54(b).

We conclude that Judge Farris unnecessarily disqualified herself under RCW 4.12.050 but that Welch fails to show prejudice warranting reversal.

---

[11] Alteration in original.

2. Summary Judgment

Welch argues that Judge Weiss erred by granting summary judgment for PEMCO. She contends PEMCO "cannot establish an exclusion from coverage due to Morgan's domestic abuse."[12] We agree.

We review a trial court's grant of summary judgment de novo, engaging in the same inquiry as the trial court. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989). A party is entitled to summary judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We view all evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Young*, 112 Wn.2d at 226.

We interpret language from an insurance policy de novo. *Vision One, LLC v. Phila. Indem. Ins. Co.*, 174 Wn.2d 501, 512, 276 P.3d 300 (2012). And we "construe insurance policies as the average person purchasing insurance would." *Id.* That is, we give the language a fair, reasonable, and sensible construction. *Id.* And we give undefined terms their plain, ordinary, and popular meaning. *Seattle Tunnel Partners v. Great Lakes Reinsurance (UK) PLC*, 18 Wn. App. 2d 600, 611, 492 P.3d 843 (2021), *aff'd*, 200 Wn.2d 315, 516 P.3d 796 (2022). We

---

[12] Welch also argues that PEMCO is estopped from arguing against coverage under the policy's effective intentional loss provision because it initially denied coverage under a different intentional loss provision that was deleted from the policy by an endorsement. In denying an insured's claim for coverage, an insurer must assert a basis for the denial, and "during litigation insurers may be precluded from asserting new grounds for denying coverage." *Vision One, LLC v. Phila. Indem. Ins. Co.*, 174 Wn.2d 501, 520, 276 P.3d 300 (2012). But PEMCO's initial incorrect citation to the deleted intentional loss provision and subsequent correction to the effective intentional loss provision does not amount to new grounds for denial.

may turn to the dictionary definition of an undefined term to determine its plain meaning. *Id.*

Because coverage exclusions " 'are contrary to the fundamental protective purpose of insurance,' " we strictly construe exclusions against the insurer, not extending them " 'beyond their clear and unequivocal meaning.' " *Vision One*, 174 Wn.2d at 512 (quoting *State Farm Fire & Cas. Co. v. Ham & Rye, LLC*, 142 Wn. App. 6, 13, 174 P.3d 1175 (2007)). An insurance clause is ambiguous when, on its face, it is susceptible to two reasonable interpretations. *Am. Nat'l Fire Ins. Co. v. B & L Trucking & Constr. Co.*, 134 Wn.2d 413, 428, 951 P.2d 250 (1998). We construe ambiguities in a policy against the insurer. *Vision One,* 174 Wn.2d at 512.

Welch's policy excludes coverage for intentional loss unless "an act of domestic abuse by another insured under the policy" causes the loss. The policy defines "domestic abuse" as "[p]hysical harm, bodily injury, assault or the infliction of fear of imminent physical harm, bodily injury or assault between family or household members," and "[i]ntentionally, knowingly or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another family or household member."[13] The PEMCO policy language parallels former RCW 48.18.550 (1998), the statute in effect when Morgan tried to kill Welch and burned down the house.

---

[13] The policy definition also includes sexual assault or stalking of family or household members.

RCW 48.18.550(3) requires insurers to cover intentional loss "caused by an act of domestic abuse by another insured under the policy."[14]  But neither the policy nor the former statute define the word "family."  So, we look to the dictionary to determine the ordinary meaning of the term.  *Seattle Tunnel Partners*, 18 Wn. App. 2d at 611.  Older editions of the dictionary define "family" as "a group of individuals living under one roof," or "the basic biosocial unit in society having as its nucleus two or more adults living together and cooperating in the care and rearing of their own or adopted children."  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 821 (2002).  Under that definition, Welch does not meet the definition of "family."  Welch divorced Morgan, moved out of the house, and was living with a new partner at the time of the fire.

But more modern editions of the dictionary define "family" as "the basic unit in society traditionally consisting of two parents rearing their children," or "[a] group consisting of parents and their children."  MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com (last visited Aug. 20, 2024); BLACK'S LAW DICTIONARY 747 (11th ed. 2019).  Welch meets these definitions because she and Morgan were raising K.W. under a parenting plan that granted them shared custody and called for joint decision-making.[15]  As such, they were two parents rearing their child.

In *Matthews v. Penn-America Insurance Co.*, 106 Wn. App. 745, 747-48, 23 P.3d 451 (2001), Division Two of our court considered the definition of "family"

---

[14] The former statute had the same language.

[15] We note that even if both dictionary definitions are reasonable, they create an ambiguity that we must resolve against PEMCO.  *Vision One,* 174 Wn.2d at 512.

under the terms of an uninsured motorist policy. It noted that "the most *common* use of 'family' 'conveys the notion of some relationship—blood or otherwise,' " and that " '[i]n its most common use, the word implies father, mother and children—immediate blood relatives.' " *Id.* at 749[16] (quoting *Collins v. Nw. Cas. Co.*, 180 Wash. 347, 352, 39 P.2d 986 (1935)). And it said that "[a]lthough this does not foreclose further analysis of the meaning of 'family,' the most common use is, by definition, the meaning an average insurance purchaser is most likely to consider." *Id.*

We agree with Division Two and conclude that an average person purchasing insurance would understand the term "family" under the more modern definition. Because Welch and Morgan share a child that they were raising together, Welch is "family" under the policy's domestic abuse exception to the intentional loss exclusion. As a result, the trial court erred by granting summary judgment for PEMCO and refusing to grant partial summary judgment for Welch.[17]

We reverse summary judgment for PEMCO, direct the court to enter partial summary judgment for Welch for breach of contract, and remand for further proceedings.[18]

---

[16] Alteration in original.

[17] Because we conclude Welch and Morgan are family as defined in the domestic abuse exception to the intentional loss exclusion, we do not address her alternative arguments for coverage.

[18] Because the trial court dismissed Welch's bad faith, IFCA, and CPA claims on the ground that they stemmed from Welch's claim of unreasonable denial of coverage, we reverse the order dismissing those claims as well and remand for further proceedings.

3. Attorney Fees

Welch requests attorney fees on appeal under RAP 18.1 and *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991).[19]

Under RAP 18.1(a), we may award attorney fees on appeal if "applicable law grants to a party the right to recover reasonable attorney fees." And under *Olympic Steamship*, we award attorney fees to "[a]n insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract." 117 Wn.2d at 53-54. PEMCO denied Welch coverage under the policy, compelling Welch to sue PEMCO. Because we find coverage, we award Welch attorney fees on appeal subject to compliance with RAP 18.1(d).

We reverse summary judgment for PEMCO, direct the court to enter partial summary judgment for Welch for breach of contract, and remand for further proceedings.

Brennan, J

WE CONCUR:

Hazelrigg, A.C.J

Dwyer, J.

---

[19] Welch also argues that the IFCA and CPA both provide for reasonable attorney fees to successful claimants. Because we remand for further proceedings on those claims, we do not reach her request for attorney fees under either statute.