ZEKE BRYANT *et ux. v.* T. H. FREEMAN *et al.*

(*Nashville.* December Term, 1915.)

1. HUSBAND AND WIFE. Coverture. Rights of.

Where a married woman whose husband had been sentenced to the penitentiary for life disposed of her property, representing herself to be a widow, her fraud estops her from questioning the conveyance on the ground that her husband did not join, and her privy examination was not taken in the form prescribed for deeds of married women. (*Post, pp.* 171, 172.)

Case cited and approved: Pilcher v. Smith, 39 Tenn., 208; Cooley v. Steele, 39 Tenn., 605; Howell v. Hale, 73 Tenn., 405; Gates v. Card, 93 Tenn., 334; Rawley v. Burris (Ch. App.), 47 S. W., 176; Galbraith v. Lunsford, 87 Tenn., 89; Johnson City v. Wolfe, 103 Tenn., 277.

2. Curtesy. Curtesy initiate. Right of husband.

Where a wife after the birth of heirs sold her separate property while the husband was in the penitentiary, and after his release, he joined with her in disposing of property purchased with the proceeds thereof, he ratified the original sale, and estopped himself from setting up any rights in the first property which he might have under his curtesy initiate. . (*Post, pp.* 172, 173.)

Cases cited and approved: Guion v. Anderson, 27 Tenn., 325; Bryant v. Freeman, 131 Tenn., 87.

3. HUSBAND AND WIFE. Actions to recover land. Parties.

Where a wife sold her separate property, representing herself to be a widow, when, in fact, her husband was living and entitled to his estate by the curtesy initiate, the purchaser having entered into possession, a joint disseisin was effected, so that a joint suit by the husband and wife was necessary; hence, as the wife was estopped from asserting her rights,

there could be no relief, the wife not having effected a fraud on her husband.  (*Post, pp.* 172, 173.)

4. HOMESTEAD.  Alienation.  Right of.

Under Const. art. 11, sec. 11, and Shannon's Code, sec. 3798, providing that the homestead shall not be aliened save by the joint consent of the husband and wife where that relation exists, a husband, though incarcerated in the penitentiary, did not, where he maintained his family relations, sending his wife money from the institution and resuming his position as head of the family on his release, lose that *status* by reason of his incarceration, so that separate property of the wife upon which she lived did not constitute the family homestead, which could not be aliened without the joint consent of the spouses. (*Post, pp.* 173, 174.)

Cases cited and approved:  Huffman v. Smyth, 47 Or., 573.

Code cited and construed:  Sec. 3798 (S.).

Constitution cited and construed:  Sec. 11, art. 11.

---

FROM WILSON.

---

Appeal from the Chancery Court of Wilson County.—J. W. STOUT, Chancellor.

SETH M. WALKER, for appellants.

W. R. CHAMBERS and HORACE OSMENT, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

On September 22, 1910, Mrs. Isa Bryant, representing herself as a widow, sold and conveyed to defendant T. H. Freeman her tract of eighteen and one-half acres of land lying in Wilson county, this State, for the

sum of $850, which was a fair price. Mrs. Bryant was, however, not in fact a widow. Her husband, Zeke Bryant, was some years prior to the execution of the conveyance confined in the State penitentiary under a life sentence for the crime of murder, and was so confined when the conveyance was made. Freeman had heard of the sentence and imprisonment, but had also heard afterwards that Bryant was dead, and relied on the statement of Mrs. Bryant that she was a widow, in which capacity she executed and acknowledged the deed. A short time before the bill in the present case was filed, which was on May 26, 1914, Zeke Bryant was released from the penitentiary on parole. The bill was filed to recover the land on the ground that Mrs. Bryant's deed was void because her husband had not joined in it, and her privy examination was not taken in the form prescribed for the deeds of married women in this State. The defense interposed was the fraud of the wife in representing herself as a widow and so inducing the purchase.

1. We think the defense is well founded. The law intends the disability of coverture as a shelter, not as a cloak for fraud. When used for the latter purpose, it will not be permitted to inflict a wrong on innocent people. *Pilcher* v. *Smith,* 2 Head (39 Tenn.), 208; *Cooley* v. *Steele,* 2 Head. 605; *Howell* v. *Hale,* 5 Lea (73 Tenn.), 405; *Gates* v. *Card,* 9 Pick. (93 Tenn.), 334, 341, 24 S. W., 486; *Rawley* v. *Burris* (Ch. App.), 47 S. W., 176. It has also been held that a married woman may estop herself by acts *in pais* done with

no fraudulent intention where other persons have been misled to their injury thereby. *Galbraith* v. *Lunsford*, 3 Pick. (87 Tenn.), 89, 9 S. W., 365, 1 L. R. A., 522; *Johnson City* v. *Wolfe*, 19 Pick. (103 Tenn.), 277, 52 S. W., 991. We do not think that Freeman was guilty of negligence in relying on the statement of Mrs. Bryant that she was a widow. There was no reason why he should inquire further. Any one would readily have believed that she knew.

2. The husband claims that he is entitled to his estate of tenancy by the curtesy intiate, so called in *Guion* v. *Anderson*, 8 Humph. (27 Tenn.), 325. The additional facts bearing on this aspect of the case are that there were two children born to Zeke Bryant and his wife; also that Mrs. Bryant, on receiving the $850 in cash for her small tract, immediately reinvested $750 of the fund in a house and lot in the city of Nashville, taking title in her own name. We cannot doubt that Zeke Bryant knew that this home was bought by his wife with the proceeds of her eighteen and one-half acres, since they had no other means. With this knowledge, he subsequently joined her in conveying the Nashville property to a third party. He thereby ratified her act in selling the eighteen and one-half acres, and reinvesting the proceeds in the Nashville property and estopped himself from resorting to the Wilson county property, from which such funds were derived. Either this is true, or we must conclude that he intended to practice a fraud by seeking to avail himself of the benefits of both pieces of real estate.

But every presumption is in favor of honesty and fair dealing, rather than the contrary. This conclusion is in no sense countervailed by the subsequent effort to reassert title to the property now in question. Moreover, by the deed which the wife made, and possession given thereunder, a joint disseisin was effected, requiring a joint suit by the husband and wife as a necessary condition of obtaining relief (*Bryant* v. *Freeman,* 131 Tenn., 87, 173 S. W., 863, L. R. A., 1915D, 996), and, the wife being estopped by her fraud, a joint action cannot be maintained. It is objected that, if this view be sound, the wife may at any time fraudulently deprive her husband of his tenancy by the curtesy initiate, leaving him without redress. If such an act of fraud on the part of the wife against the husband should be attempted, we doubt not the law would afford ample redress, since its arm is long for the arrest of fraud whether perpetrated by man or woman; but the present is not a case wherein the wife has practiced a fraud on her husband's rights. On the contrary, it is one wherein the wife acted in the interest of her husband, having sold the eighteen and one-half acres in Wilson county in order that she might purchase a home in Nashville, and be near him during his confinement in the penitentiary, and see him more frequently than she had formerly done, and might be enabled to prosecute her efforts for his release.

3. It is insisted, however, that at all events complainants are entitled to recover the eighteen and one-half acres as a homestead. This contention is based

on the supposition that because Zeke Bryant was confined in the penitentiary he was no longer the head of his family. It is recognized that the homestead must consist of land belonging to the head of the family, but the insistence is that, inasmuch as the husband in the case before us was incarcerated in the State prison, his wife became the head of the family, and thereby acquired a homestead in her own land, which could not be conveyed except by the joint deed of the husband and wife under article 11, sec. 11, of the constitution, and section 3798, Shan. Code, which together provide that the homestead shall not be aliened except by the joint consent of husband and wife, where that relation exists; such consent to be evidenced "by a conveyance duly executed as required by law for married women." But Bryant did not cease to be the head of his family. He did not desert his family, and, though by reason of his imprisonment he was unable to reside with them, they visited him, were permitted to see him, and he and his wife conducted a correspondence, which evinced mutual esteem and affection, and while so confined he on one occasion at least, sent money to his wife. Compare *Huffman* v. *Smyth,* 47 Or., 573, 84 Pac., 80, 114 Am. St. Rep., 938, 8 Ann. Cas., 678, and note on pages 681, 682. Moreover, Bryant immediately resumed his ordinary relations with his family as soon as he was released from the penitentiary, and was so living when the present bill was filed.

For the reasons stated, we are of the opinion that the chancellor committed no error in dismissing the bill, and his decree is therefore affirmed.