JESSE BOYD

*v.*

PEOPLES PROTECTIVE LIFE INSURANCE COMPANY, a
Corporation.

(*Nashville,* December Term, 1960.)

Opinion filed April 5, 1961.

CHARLES GALBREATH, Nashville, for petitioner.

WILLIAM D. HAGEWOOD, Nashville, CROWNOVER, BRAN-
STETTER & FOLK, Nashville, of counsel, for respondent.

Mr. Justice Tomlinson delivered the opinion of the Court.

Both petitions for certiorari have been granted.

Boyd was issued a life insurance policy by Peoples Protective Life Insurance Company. The contract included life insurance upon his wife and nine children subject to the conditions and exclusions stated in the policy. His son, Roy, who was living in the home of his father at the time of the issuance of the policy, was subsequently adjudged, as he had theretofore been, a delinquent juvenile and was committed on October 24, 1958 for an indefinite period to that State Vocational School for Boys known as Jordonia.

On March 11, 1959, and when he was sixteen years old, he was killed by a bullet fired by a guard at this school. The youth was trying to escape. The grand jury returned a no true bill on the effort to indict this guard for that homicide. The policy contained a double indem-

nity clause in the event of accidental death. The face amount of the policy was $500.

At the close of the plaintiff's evidence, and at the close of all the evidence, the motion of the Insurance Company for a directed verdict was overruled. The jury returned a verdict in favor of the insured for the face amount of the policy, plus an additional $500, presumably based on a finding that the shooting was an accident, and $250 additional, presumably by way of penalty. A judgment was automatically entered immediately following a recitation of the verdict.

The motion thereafter made by the Insurance Company for a new trial and a directed verdict for the defendant on several grounds, but principally on the ground that there was no evidence to support the verdict, and the ground hereafter stated, was sustained by the Trial Judge, without elaboration, and verdict and judgment entered for the Insurance Company.

The Court of Appeals reversed and remanded for a new trial. As heretofore stated the case here is upon the certiorari of each litigant.

First, there must be a determination as to the proper construction of the following two clauses of the insurance contract in question:

"Eligible Family Members—Members of Insured's family who are insured under this policy are his wife and unmarried children (including stepchildren and legally adopted children) under 19 years of age who live in his household.

"The insurance on the wife applies to the Insured's legal wife. If Insured becomes divorced, the insurance

on the divorced wife will cease. If a child becomes married, reached his or her 19th birthday, or moves away from the Insured's household, the insurance on that child will cease.''

While the Judge's charge is not in the record, one ground of the motion for a new trial is that ''the verdict of the jury is against the law as charged by the Court that a ''household is a 'family living together' ''. It is inferable, therefore, that he thus charged the jury. The opinion of the Court of Appeals concludes with the statement that:

''We think Roy Boud was a member of his father's household at the time Roy was killed. Certainly there is an abundant evidence in the record before us to support such finding of the jury'',

and that the Trial Judge committed reversible error ''when he took this case from the jury and held as a matter of law that Roy Boyd was not covered by the policy''. The opinion of the Court of Appeals quoted from Bouvier's Law Dictionary as follows:

''Household. Those who dwell under the same roof and constitutes a family. Webst. But it is not necessary that they should be under a roof, or that the father of the family be with it, if the mother and children keep together so as to constitute a family; [*Woodward v. Murray*] 18 Johns, [400] 402.''

It then likewise quoted from a Minnesota case reported in 143 Minn. 187, 173 N.W. 411, 412, 5 A.L.R. 256, styled *Millett v. Pearson,* as follows:

''As a general rule of law persons under legal disability or restraint or persons in want of freedom are

incapable of losing or gaining a residence by acts performed by them under the control of others. There must be an exercise of volition by persons free from restraint and capable of acting for themselves in order to acquire or lose a residence. A person imprisoned under operation of law does not thereby change his residence. *Town of Freeport v. Board of Supervisors* [of Stephenson County,] 41 Ill. 495; *Clark v. Robinson,* 88 Ill. 498; *Barton v. Barton,* 74 Ga. 761; *Grant v. Dalliber,* 11 Conn. 234.''

It then referred to *Bryant v. Freeman,* 134 Tenn. 169, 183 S.W. 731, 733, holding that ''but Bryant did not cease to be the head of his family'' by reason of being imprisoned, thus unable to reside with them during that time. This man resumed his relations with his family when released from prison.

The question in *Bryant v. Freeman,* in so far as material here, was that the wife sold her property while her husband was in prison. He did not sign the deed. The problem was whether this eliminated the requirement of joint consent of husband and wife to convey homestead. It was held that he did not lose his status as head of his family by reason of his incarceration.

The Court of Appeals seems to be construing the word ''household'' as synonymous with the word ''residence'', but the accuracy of that assumption is certainly to be doubted. In *Island v. Fireman's Fund Indem. Co.,* 30 Cal.2d 541, 184 P.2d 153, 173 A.L.R. 896, Island had obtained a judgment against J. C. Cave, Sr., for injuries received in an automobile accident in which the car was being driven by Cave. The automobile in question was not the property of Cave, Sr., but that of the son who, with

his wife, lived with his father until four months before, when he entered the army.

The father had procured an insurance policy on his own car. That insurance contract extended the coverage to any other automobile operated by the father, but upon the specific condition that the insurance should not apply "(a) to any automobile owned in full or in part by, registered in the name of, hired as part of a frequent use of hired automobiles by, or furnished for regular use to, the named insured or a member of his household other than such chauffeur or servant * * *."

The son had requested his father to drive his car at times to keep the battery from going dead, etc.

The Insurance Company defended on the ground that the automobile which caused the injuries for which damages were awarded was not covered by the policy. Of course, the basis for such defense was that the son was a member of the father's household; hence, that the policy excluded the accident in question. The basis of such contention was, of course, that service in the United States Army did not change the residence of the soldier. The Court, responsive to that insistence, said that:

"As contended by the insurer, the domicile or legal residence of a person is in no way affected by his enlistment in the armed forces in the absence of a contrary intent. (Citing authorities.) But these decisions are not decisive upon the question as to whether military service excludes the enlistee from being a 'member of the household' within the meaning of that term as used in an insurance policy." 184 P.2d at page 156, 173 A.L.R. at page 900.

Then the case quoting from Webster's New International Dictionary said that one of the definitions of the word "household" is "those who dwell under the same roof and compose a family". The Court then noted that the word "household" "may have different meanings under different circumstances", but that the word "household"

"is variously used to designate people, generally, who live together in the same house, including the family, servants, and boarders; or it may be used as including only members of the family relation. It is probable that the two terms are coupled together in this statute to indicate that they are used synonymously, the 'family' to include only those of the household who are thus intimately associated, the 'household' to exclude those of the family not living in the home." 184 P.2d at page 156, 173 A.L.R. at page 900.

Another case holding that to be the definition of "a household" was cited.

The Court concluded that while the son was away in the Army he "was not a member of his father's household at the time of the happening of the accident to Island". It commented, however, that if an insurance contract provision is capable of two meanings the one favorable to the insured must be adopted.

■ The great weight of authority seems to be to the effect that a household means those living together under one roof, under one head and under the common control of one person. The brief of the Insurance Company cites cases reported in *Pippin v. Jones,* 52 Ala. 161; *Home Ins. Co. v. Pettit,* 225 Ala. 487, 143 So. 839; *Rydstrom v. Queens Ins. Co.,* 137 Md. 349, 113 A. 586, 14 A.L.R. 212; *Cartier v. Lumbermen's Mut. Cas. Co.,* 84 N.H. 526, 527,

153 A. 6; *People v. Whitted,* Mag.Ct., 124 N.Y.S.2d 189; *Lumbermen's Mut. Cas. Co., v. Pulsifer,* D.C.Me., 41 F. Supp. 249; *Rathbun v. Aetna Cas. & Sur. Co.,* 144 Conn. 165, 128 A.2d 327, and only those living under one roof citing *Island v. Fireman's Fund Indem. Co.,* 30 Cal.2d 541, 184 P.2d 153; *Moore Shipbuilding Corp. v. Industrial Acc. Comm.,* 185 Cal. 200, 196 P. 257, 13 A.L.R. 676; *Rathbun v. Aetna Cas. & Sur. Co.,* 144 Conn. 165, 128 A.2d 327; *Collins v. Northwest Cas. Co.,* 180 Wash. 347, 39 P.2d 986, 97 A.L.R. 1235; *McGrady v. Liberty Nat. Life Ins. Co.,* 40 Ala.App. 390, 114 So.2d 324.

Reference to Volume 19, Words and Phrases under the title Household, page 700 et seq. indicates that the authorities, by a great preponderance, define the household as a family living under one roof. In the supplement to the 19th Volume of Words and Phrases under the subject Household appears the following:

" 'Family group' life policy providing that members of insured's 'family' who were insured under the policy were the wife and unmarried children of the insured under 19 years of age who lived in insured's 'household' did not cover death of insured's son who died while living in a school for retarded children, which was located a hundred miles away from insured's home, and to which the son had been committed by court order. *McGrady v. Liberty Nat. Life Ins. Co.,* 114 So.2d 324, 325, 40 Ala.App. 390."

 Boyd, the insured here, says that this Alabama case is not in point because the child there had been committed to this institution before the policy was issued. This appears to be a distinction without a difference. The question still was whether he should be regarded as "living" in his father's household, though physically absent

in this school. If living in the household means what seems to be the great weight of authority, to-wit, living under the same roof, then the case is in point for that is the question in this case.

If the numerous decisions to the effect stated are ignored, and approach is made to the question from a practical sense standpoint it is not apparent as to how this boy can be regarded other than excluded from the benefits of the contract. The contract first limits the household to wife and unmarried children under nineteen years of age. Then it says "who live in his household". If the man on the street were asked what he regarded that to mean he would reply, in this Court's opinion, that it means the children under nineteen years who are living in the house with their father.

The next paragraph of the policy wherein certain children are excluded provides that if a child marries or reaches his nineteenth birthday "or moves away from the insured's household the insurance on that child will cease". The expression "moves away from the insured's household" cannot, as this Court views it, be reasonably construed to mean anything else than to leave the house in which the father and mother and children live.

It is argued that to so construe the expression "living in the household" would be to exclude children who are away at summer camp or away at school. A child in summer camp or placed in some private school by its father is only temporarily away from home and is still under the dominion and control of the head of the house. He may be brought home at any time.

The question has arisen under the Court of Appeals' opinion as to whether the construction of this contract is

one for a jury. It is a fact that when a writing is ambiguous, and is capable of more than one construction, perhaps it is a jury question. In that connection, in this case it was testified by the mother that at the time application for this policy was made she had another son, Wayne, who was a student at Tennessee Preparatory School; hence, not under the roof. She says she asked the agent at that time whether this son, Wayne, would be insured under this policy, and he said that he would.

There is no contradiction of this evidence. The brief in the Court of Appeals filed in behalf of the insured father expresses the opinion that though the Insurance Company is not bound by the opinion of its agent, yet the testimony was admitted without objection, was considered by the jury and indicates that "a man in a better position to understand the coverage of the policy than the insured or the jury felt that the language employed did not exclude a minor child while temporarily in a state institution". The first observation about this remark is that this boy, Roy, was not "temporarily in" Jordonia. He was committed indefinitely, if that is to make any difference.

But aside from that, if this insurance contract is not reasonably susceptible of any other interpretation than that it means a child living under the roof with its father, then it is the duty of the Court to say so. This Court is of the opinion that it is not reasonably susceptible of any other interpretation.

Such being the construction placed by this Court upon the Insurance Contract, it is, of course, unnecessary to consider other questions made.

The judgment of the Court of Appeals will be reversed and that of the Circuit Court affirmed.