ROY McAMIS DISPOSAL SERVICE, INC., Plaintiff-Appellee,

v.

HIWASSEE SYSTEMS, INC., James R. Reynolds, Jr., individually, and Carl B. Dalton, individually, Defendants-Appellants.

Court of Appeals of Tennessee, Eastern Section.

Aug. 2, 1979.

Certiorari Denied by Supreme Court Oct. 29, 1979.

Robert L. McMurray, with Bell, Painter, McMurray, Callaway, Brown, Mashburn & Headrick, Cleveland, for appellant.

Jack W. Whitson, with Whitson, Webb & Burns, Cleveland, for appellee.

OPINION

SANDERS, Judge.

The Defendants have appealed form a chancery decree enjoining them from vio-

lating the non-competitive provision of a contract.

In January, 1976, the Plaintiff-Appellee, Roy McAmis Disposal Service, Inc., and the Defendant-Appellant, Hiwassee Systems, Inc., were both engaged in the solid waste disposal business in Bradley County and adjoining counties. They both serviced household and commercial accounts, making a monthly charge to their customers for their service. The Defendant serviced primarily household accounts but had a limited number of commercial accounts. The Plaintiff had a large number of both household and commercial accounts.

On January 10, 1976, the Plaintiff and Defendant entered into a contract wherein the Defendant agreed to purchase and the Plaintiff agreed to sell all of its household accounts. The contract recites there are 1,393 customer accounts transferred. As pertinent to this litigation, the contract provides:

"7. In consideration of this agreement and payment of this purchase price, the seller agrees that neither his agents or assigns will not enter into the business of household refuge collection in Bradley County, Tenn. or any adjacent counties for a period of not less than 5 years."

\* \* \* \* \* \*

"10. The buyer agrees that for a period of 5 years not to enter into the industrial or commercial container service in Bradley County, Tenn. or adjacent counties. However, during this period of time, the buyer or seller has the 1st refusal of any bonafied offer."

Shortly after the contract was entered into the Defendant observed the Plaintiff was picking up garbage at a trailer court. The Defendant contacted the Plaintiff about the matter, insisting the trailers were households and the Plaintiff was in violation of the agreement in performing this service. The Plaintiff, however, insisted this was a commercial account and, for this reason, it had a right to perform the service. The basis for the insistence of the Plaintiff that the trailers were commercial accounts was because the owner of the trailer court paid for the service instead of each individual resident of the trailer court paying for his individual service.

The proof shows the Plaintiff continued to serve all trailer courts where the bill was paid by one person rather than the individual owner or occupant of the trailer. This involved some 250 to 300 trailers and ranged in size from a single residence and two trailers up to 35 trailers per trailer park. It appears that most of these trailers had individual garbage cans and many of them reimbursed the trailer park owner or operator for the service.

Prolonged negotiations were carried on between the Plaintiff and Defendant attempting to resolve this issue but they were unable to do so, the Defendant at all times insisting these were household accounts and the Plaintiff insisting they were commercial accounts. At one point the Plaintiff and Defendant entered into negotiations pointing toward the Defendant's purchasing all of the Plaintiff's remaining accounts, but they were unable to agree on a purchase price.

Soon after these negotiations were terminated the Defendant consulted its attorney about the advisability of entering into collecting solid waste for commercial accounts. He was advised by his attorney that, since the Plaintiff had breached the contract, the Defendant was no longer bound by its terms.

In August 1977, the Defendant began soliciting and servicing commercial accounts. In May, 1978, the Plaintiff filed suit in the chancery court seeking to enjoin the Defendant and its officers and owners, Defendants-Appellants James R. Reynolds, Jr., and Carl B. Dalton, from servicing commercial accounts and for damages.

Upon the trial of the case the Chancellor found the issues in favor of the Plaintiff. He enjoined the Defendant from engaging in industrial or commercial container service for garbage or other solid waste disposal in Bradley and adjoining counties through January 10, 1981, except for service to commercial customers with which it had

contracts up to the date of trial. He also held the Defendant was liable to the Plaintiff in damages and referred the matter to the clerk and master for the purpose of fixing the amount.

The Defendants prayed for and were granted an interlocutory appeal and have assigned the action of the Chancellor as error.

In their brief the Defendants argued the decree should be reversed because: (1) The Plaintiff does not come into court with "clean hands"; (2) The Plaintiff was guilty of laches; and (3) Under the facts in the case the enforcement of the contract would be against public policy.

The Plaintiff insists that none of these arguments are valid and the action of the Chancellor should be sustained.

From our review of the record we conclude there is also a controlling issue of whether or not there was ever a meeting of the minds of the contracting parties as to what was household disposable waste and what was commercial disposable waste. It is the position of the Plaintiff that the question of whether an account is a household or commercial account is determined by who pays for the service. If the person who pays for the service is engaged in a business such as renting space for trailers, and that person pays for the service, it is a commercial account regardless of the type or number of containers involved and regardless of whether or not he is reimbursed. The Defendant, however, insists that whether an account is household or commercial is determined by the type of container that is used. If an ordinary trash can is used, whether the establishment is a store, a filling station or a residence, it is a household account. If a container with a capacity of one square yard or more is used it is a commercial account regardless of the type of establishment served. Unfortunately, there was no discussion between the parties prior to the execution of the agreement as to what was to be considered as commercial, industrial or household nor is there anything in the agreement which tends to clarify the meaning.

Aside from the opinions expressed by the parties to the litigation there is no proof in the record to support the theory of their respective contentions. In their respective briefs the parties agree the term "household" is commonly defined as a family living together under one roof under one head and under common control of one person. *Boyd v. Peoples Protective Life Insurance Company,* 208 Tenn. 280, 345 S.W.2d 869 (1961). They also agree that a trailer using an ordinary garbage can, where the occupant pays for the service, is a household within the meaning of the contract. Both parties agree that "in seeking to find the intention of the parties to a contract words in the contract, unless otherwise defined, will be given their usual and ordinary meaning." *Seeley v. Pilot Fire & Cas. Co.,* 222 Tenn. 33, 432 S.W.2d 58 (1968).

When we apply this rule to the contract before us, we think a trailer unquestionably falls within the definition of a household. Also, when we look at what the Plaintiff agreed not to do, we find no language to permit it to pick up household refuse where its contract was with and it was paid by the trailer park owner or operator. The contract provides the Plaintiff "will not enter into the business of household refuse collection." The Defendant, on the other hand, agreed, "not to enter into the industrial or commercial container service." We construe this to mean that if a trailer court or apartment building was served by a commercial or industrial container the Defendant could not render this service. Also, when we apply the same rule of interpretation to the contract, we cannot find that it says what either of the parties understood it to mean.

■ We, accordingly, hold the Plaintiff's cause of action must fail for two reasons: (1) When it continued to service the trailer courts using containers other than commercial or industrial it was collecting household refuse in violation of the contract. The party who violates a material provision of a contract will not be heard to complain of a later violation of a similar nature by the other party to the contract.

*Cummins v. McCoy*, 22 Tenn.App. 681, 691, 125 S.W.2d 509 (1938); (2) We find there was no meeting of the minds of the parties to the contract as to what they were permitted to continue to do and what they were prohibited from doing after the contract was entered into.

The meeting of the minds in mutual assent to the terms of a contract has long been regarded by our courts as essential to the creation of an enforceable contract. *American Lead Pencil Co. v. Nashville C. & St. L.Ry.*, 124 Tenn. 57, 134 S.W. 613 (1910); *Forest Inc. of Knoxville v. Guaranty Mortgage Co.*, Tenn.App., 534 S.W.2d 853 (1975).

The Defendants' assignments of error are sustained. The decree of the Chancellor is reversed and the Plaintiff's suit is dismissed.

The cost of this appeal, together with the cost in the trial court, is taxed to the Appellee.

PARROTT, P. J. (E.S.), and GODDARD, J., concur.