499 S.E.2d 865

Crystal Lynn SPANGLER, Mother and Next Friend of Christopher Ryan Hensley, an Infant, and Crystal Spangler, Individually, Plaintiffs Below, Appellants,

v.

Jeffrey ARMSTRONG and Patricia Armstrong and Kentucky Central Insurance Company, a Corporation, Defendants Below, Appellees.

No. 23994.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1997.

Decided Dec. 15, 1997.

Matthew J. Hayes, Pepper & Nason, Charleston, for Appellants.

Catherine D. Munster, James A. Varner, McNeer, Highland, McMunn & Varner,

Clarksburg, for Appellee Kentucky Central Insurance Company.

PER CURIAM:[1]

This declaratory judgment action is before this Court upon an appeal from a final order of the Circuit Court of Fayette County entered on May 24, 1996. Pursuant to that order, the circuit court entered declaratory judgment in favor of the appellee, Kentucky Central Insurance Company (hereinafter "Kentucky Central"), declaring that liability coverage did not exist for Jeffrey and Patricia Armstrong under an insurance policy issued to Timothy and Margaret Armstrong. Specifically, the circuit court determined that Jeffrey and Patricia Armstrong were not "insureds" for purposes of personal liability coverage.

This Court has before it the petition for appeal, all matters of record, and the briefs and argument of counsel. As discussed below, this Court is of the opinion that Jeffrey and Patricia Armstrong are not "insureds" under the policy. Accordingly, the final order is affirmed.

I

On February 22, 1991, Christopher Ryan Hensley, infant child of Crystal Lynn Spangler, was bitten on the face by a Chow dog owned by Jeffrey Armstrong and his mother, Patricia Armstrong. The attack occurred on property owned by Timothy Armstrong and his wife, Margaret Armstrong, and rented and occupied by Jeffrey and Patricia Armstrong.[2] As a result of the attack, Crystal Spangler filed suit individually and on behalf of her son against all four Armstrongs.

Prior to the incident, Kentucky Central issued a dwelling policy which included a personal liability section to Timothy and Margaret Armstrong. Kentucky Central undertook the defense of its named insureds and filed an answer to the complaint on their behalf. Jeffrey and Patricia Armstrong failed to file answers and default judgments on the issue of liability were entered against them.

Thereafter, appellants were granted leave to amend their complaint to bring in Kentucky Central and assert a declaratory judgment action to determine insurance coverage for Jeffrey and Patricia Armstrong under the policy issued to Timothy Armstrong. The declaration page of the personal liability section lists Timothy Armstrong and his address as General Delivery, Winona, West Virginia, but it is noted that the residence premises covered by the policy is the "Scarbro property" which is where the attack occurred.

The policy indicates that coverage exists for the dwelling only.[3] The dwelling rating information sheet indicates that the residence is "Owner Occupied." However, it is undisputed that Timothy and Margaret Armstrong have not resided at the property where the attack occurred since they purchased it. Instead, Jeffrey and Patricia Armstrong have lived on the property and paid the mortgage, taxes and utilities as rent. There is no evidence that Kentucky Central knew that Timothy Armstrong's brother and mother were living on the property.

While appellants amended their complaint, Kentucky Central, in further defense of its insureds, filed a motion for summary judgment on their behalf. On April 24, 1996, the circuit court granted the motion and entered an order dismissing Timothy and Margaret Armstrong from the suit.[4] Subsequently, on May 24, 1996, the circuit court issued the

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992) (*"Per curiam* opinions ... are used to decide only the specific case before the Court; everything in a *per curiam* opinion beyond the syllabus point is merely *obiter dicta....* Other courts, such as many of the United States Circuit Courts of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published per curiam opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a *per curiam* opinion.").

2. Jeffrey and Patricia Armstrong are Timothy Armstrong's brother and mother.

3. Jeffrey and Patricia Armstrong did not have renter's insurance.

4. The April 24, 1996, order was not appealed and has now become final.

final order declaring that liability coverage did not exist for Jeffrey and Patricia Armstrong as they were not "insureds" under the clear and unambiguous terms of the policy.

## II

■ In syllabus point 3 of *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995), this Court held: "A circuit court's entry of a declaratory judgment is reviewed *de novo.*" *See also* syl. pt. 1, *Bruceton Bank v. United States Fidelity and Guaranty Ins. Co.*, 199 W.Va. 548, 486 S.E.2d 19 (1997); syl. pt. 1, *Bush v. Richardson*, 199 W.Va. 374, 484 S.E.2d 490 (1997).

In this case, appellants contend that the circuit court failed to follow the doctrine of reasonable expectations. They assert that the insurance policy is ambiguous regarding the definition of "insured." Appellants claim that by ruling that Jeffrey and Patricia Armstrong are not insured persons under the policy, the circuit court created an absurd result leaving the house and property without liability coverage which is clearly not what was intended.

Kentucky Central maintains the policy language is clear and unambiguous. It contends that Jeffrey and Patricia Armstrong were not named insureds and were not additional insureds because they did not reside in Timothy Armstrong's household. Kentucky Central further contends that the circuit court's ruling does not create "illusory coverage" or defeat the intention of Timothy and Margaret Armstrong to have personal liability coverage on the property because they were successfully defended and dismissed from the case below.

■ The critical determination in this case is whether the term "household" is ambiguous. We have previously held that: "When reasonable people can differ about the meaning of an insurance contract, the contract is ambiguous, and all ambiguities will be construed in favor of the insured." Syl. pt. 1, *D'Annunzio v. Security–Connecticut Life Ins. Co.*, 186 W.Va. 39, 410 S.E.2d 275 (1991). However, we have also held that: "Where the provisions of an insurance policy contract are clear and unambiguous they are

not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syllabus, *Keffer v. Prudential Ins. Co. of America*, 153 W.Va. 813, 172 S.E.2d 714 (1970). *See also* syl. pt. 1, *Miller v. Lemon*, 194 W.Va. 129, 459 S.E.2d 406 (1995). In addition, in syllabus point 1 of *Soliva v. Shand, Morahan & Co.*, 176 W.Va. 430, 345 S.E.2d 33 (1986), we held that: "Language in an insurance policy should be given its plain, ordinary meaning." *See also* syl. pt. 2, *Auber v. Jellen*, 196 W.Va. 168, 469 S.E.2d 104 (1996); syl. pt. 2, *Russell v. State Automobile Mut. Ins. Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992).

■ The pertinent policy language provides:

In this policy, 'you' and 'your' refer to the 'named insured' shown in the Declarations and the spouse if a resident of the same household. 'We' 'us' and 'our' refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

. . . .

3. 'insured' means you and residents of your household who are:

a. your relatives;

b. other persons under the age of 21 and in the care of any person named above;

c. with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3a or 3b above. A person or organization using or having custody of these animals or watercraft in any course of any 'business' or without consent of the owner is not an 'insured;'

In accordance with the policy language, Jeffrey and Patricia Armstrong are "insureds" under the policy as relatives of Timothy Armstrong if they were residents of his "household" at the time of the event. Although this Court has not had an occasion to consider the word "household" within an insurance policy provision, several other jurisdictions have examined this language.

For instance, in *Gredig v. Tennessee Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 911 (Tenn.Ct.App.1994), the court considered language in an insurance policy which defined "insured person" to include "(a) you; (b) your spouse or relatives of either residing in your household." The policy in question had been issued to Robert Gredig and covered a house he owned which was later destroyed by fire. Prior to the fire, Robert had traded houses with his brother, Donald Gredig, but had not given notice to his insurer. Accordingly, the insurer denied coverage on the basis that Robert had not obtained written consent for his brother to occupy the property. Donald argued that the policy was ambiguous and contended that he was an insured person under the policy because he was Robert's relative and was living in Robert's "household" at the time of the fire. *Id.* at 911–12. Finding that the language, "residing in your household," was not ambiguous, the court vacated the decision below and held that there was no coverage because "Donald and Robert were not 'living under one roof.'" *Id.* at 914. In so holding, the court relied on a prior decision of the Tennessee Supreme Court which stated: "'The great weight of authority seems to be to the effect that a household means those living together under one roof, under one head, and under the common control of one person.'" *Id.* at 913 (*quoting Boyd v. Peoples Protective Life Ins. Co.*, 208 Tenn. 280, 345 S.W.2d 869, 872 (1961)).

In *Howard v. Hartford Ins. Co.*, 127 N.H. 727, 507 A.2d 230 (1986), the court considered policy language which covered only those persons living in the named insured's household. The case resulted from a shooting incident in which the plaintiff's decedent was shot and killed by Neil Bird. The decedent and Bird had lived together in a house owned by Bird's parents who also resided on the property in a second house. The insurance policy at issue was owned by Bird's parents. The trial court found that there was no cov-erage under the policy based on the "'separate roof theory.'" *Id.*, 507 A.2d at 230–31. Affirming the decision, the New Hampshire court stated:

> [E]ven if there was an intent by the elder Birds to include the younger couple, the policy clearly states that there is liability coverage only for members of the named insured's household. We hold that someone living in a separate dwelling, though on the insured premises, is not a member of the named insured's household.

*Id.* at 232.

The court in *Hernandez v. Comco Ins. Co.*, 357 So.2d 1368 (La.Ct.App.1978), reached a similar result. In *Hernandez*, the plaintiff was injured at the home of his son when he sustained burns from the explosion of crawfish boiling equipment. The property was owned by Alvin Pellegrini, father-in-law of plaintiff's son. Pellegrini's insurance policy covered accidents of this type, but defined "insured" as "if residents of the Named Insured's household, his spouse, the relatives of either, and any other person under the age of twenty-one in the care of any Insured." *Id.* at 1369–70. In discussing the definition of "household," the Court stated: "The pattern which emerges from the myriad of decisions considering the term 'household' seems to be an emphasis on dwelling as a family under one head." *Id.* at 1371. The court concluded that two independent families existed making coverage unavailable under the policy. *Id.*

As the cases discussed above suggest, liability policies providing coverage for members of an insured's "household" generally include persons who live under the same roof, but not those who live in separate houses. *See also* 43 *Am.Jur.2d Insurance* § 704 (1982). This is consistent with the general definition of "household" found in *Webster's New Collegiate Dictionary.*[5] Consequently, we find that the word "household" in Timothy Armstrong's insurance policy is clear and unambiguous.[6] Although some jurisdictions

---

5. *Webster's New Collegiate Dictionary* 550 (1981) defines household as: "[T]hose who dwell under the same roof and compose a family."

6. Because this Court has concluded that the language of the insurance policy is unambiguous, we find no merit in appellant's argument that the circuit court failed to apply the doctrine of reasonable expectations. In *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 742, 356 S.E.2d 488, 496 (1987) we stated that: "In West Virginia, the doctrine of reasonable expec-

have reached the opposite conclusion,[7] we agree with the *Gredig* court that "the fact that the words may be difficult to apply to a given factual situation does not make those words ambiguous." 891 S.W.2d at 914. *See also Heard v. Farmers Ins. Exchange Co.*, 17 Ariz.App. 193, 496 P.2d 619 (1972).

Here, it is undisputed that Jeffrey and Patricia Armstrong and the insureds lived in separate houses which were not even on the same property. Furthermore, Jeffrey and Patricia Armstrong paid the mortgage, taxes and utilities on the house and property where they resided. Timothy Armstrong visited his mother and brother only once or twice a month. Clearly, Jeffrey and Patricia Armstrong were not residents of Timothy Armstrong's household at the time the event occurred. Accordingly, Timothy Armstrong's insurance policy does not afford coverage for Jeffrey and Patricia Armstrong because they are not "insureds" under the policy.[8]

Based upon all of the above, the final order of the Circuit Court of Fayette County entered on May 24, 1996, is affirmed.

Affirmed.

STARCHER, J., concurring:

I agree with the result in this case, but I write separately to emphasize that the *per curiam* opinion's holding should be limited to a very narrow set of facts. In the instant case, the owner of the property lived in a completely separate location, so there could be no evidence of any sort of relationship that would constitute a household.

Personally, I can't see how whether people sleep in physically separated buildings could ever be—in itself—a valid test for a household. To me, such practices as sharing common facilities and vehicles, paying for utilities together, taking some meals together, and/or sharing responsibilities for chores are far more germane to whether there is a household than whether there is one connecting roof that joins all of the individuals' sleeping quarters. In rural West Virginia it has not been uncommon for "dad" to sleep in the shed out back, but otherwise totally share in the household of the family of his offspring.

And what is to be made of the quaint notion of a household as people "dwelling as a family under one head?" If two adult siblings live together in a house, another fairly common occurrence, who, pray tell, is the "head"? I think this test, taken alone, is also entirely unworkable.

If we ever have to address this issue with more balanced equities, I'll bet our research finds that the better cases take a much more holistic approach to the determination of what is a "household."

Additionally, as we have stated over and over, the crucial test in insurance policies is not even the specific words of a policy, but the reasonable expectations of the insureds or the intended beneficiaries of the policies. That issue apparently wasn't raised in this case.

tations is limited to those instances ... in which the policy language is ambiguous."

7. *See Cal–Farm Insurance Co. v. Boisseranc*, 151 Cal.App.2d 775, 312 P.2d 401 (1957) (finding that the terms "resident" and "household" have no absolute meaning, the court affirmed the trial court's finding that a child was an "insured" under his non-custodial father's comprehensive liability policy); *Londre v. Continental Western Insurance Co.*, 117 Wis.2d 54, 343 N.W.2d 128 (Ct.App.1983) (finding that a determination of whether a person is a resident of a household for insurance purposes requires examination of all relevant facts and consideration of whether the person and the named insured are: (1) living under the same roof; (2) in a close, intimate, and formal relationship; and (3) in a relationship of substantial duration such that it is reasonable to conclude they may have considered the relationship in contracting about such matters as insurance).

8. We also find no merit to appellant's claim that the circuit court's decision left the "Scarbro property" uninsured. As noted above, Kentucky Central did not dispute that the "Scarbro" property was the insured location as it defended Timothy and Margaret Armstrong below. Although the circuit court's order is not specific, it appears that Timothy and Margaret Armstrong were dismissed from the case because they were not aware that the dog was on the property. Because the property was insured for the benefit of Timothy and Margaret Armstrong, appellant's argument lacks merit.

Having said this, I entirely agree with the result.