IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 9, 2004 Session

## KATHRYN MORRIS BROWN and SWANN BROWN JAFFURS v. JUAN F. GUTIERREZ, WILLIAM E. KESSLER, DONALD J. VERNINE, each individually and d/b/a GKV LEASING, A Tennessee General Partnership

Direct Appeal from the Chancery Court for Knox County
No. 126424-1    Hon. Daryl R. Fansler, Chancellor, by Interchange

 Filed September 20, 2004 

No. E2003-02755-COA-R3-CV

In this Declaratory Judgment action, the Trial Court established the purchase price of property pursuant to a right of first refusal, awarded interest and denied a request for attorney's fees.  On appeal by Seller, we Affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and SHARON LEE, J., joined.

Keith McCord, Knoxville, Tennessee, for Appellants.

Lewis S. Howard, Jr., Knoxville, Tennessee, for Appellees.

**OPINION**

        In this declaratory judgment action, the Chancellor declared the plaintiffs were obligated to pay Seller $344,500.00, but refused to award damages and attorney's fees. Seller has appealed.

        Plaintiffs, purchaser, brought this action in June 1995, and alleged that they had exercised their right of first refusal, but that a dispute existed as to the amount of the purchase price.

They alleged that defendant seller would have "only netted $344,500.00" and asked the Court to declare that amount was the purchase price for the property under the plaintiff's right of first refusal. Defendants filed a counter-complaint asking the Court to require purchasers to specifically perform and pay seller $367,500.00, pursuant to an offer to purchase which triggered plaintiff's right of first refusal.

In December 1995, the Court entered an Agreed Order whereby sellers would deed the property to purchasers and purchasers would pay to the defendants $344,500.00 with all other issues reserved, specifically, the amount of purchase price required to be paid by purchasers.

Following an evidentiary hearing,[1] the Chancellor filed a Memorandum Opinion and we quote, in pertinent part:

This declaratory judgment action was filed on June 9, 1995. Plaintiffs in this cause were tenants of the first floor of a building located at 5002 Kingston Pike, Knoxville, Tennessee. The parties had entered into a lease dated March 4, 1993, with defendants as lessor.

The lease agreement provided a right of first refusal to plaintiffs in the event that defendants ever offered the property for sale. In May 1995 Remax Preferred Properties, acting as the agent of the defendant, procured a contract for sale of the property in the amount of $367,500.00. . . . and required the sellers to pay Remax Preferred Properties a commission equal to the amount of $23,000.00 at closing.

The contract also acknowledged that the main floor of the premises was occupied by plaintiffs and that the lease agreement granted the tenant a right of first refusal. The real estate sales contract provided that if the tenant exercised the right of first refusal, then the real estate sales contract would become null and void and all earnest money would be returned to buyer.

Additionally, defendants had entered into a commission agreement executed by Bill Kessler, on behalf of the defendants, and Mark Hawkins, on behalf of Remax Commercial Division. Per the terms of that agreement, defendants and Remax Commercial Division agreed that the "commission agreement" did not prohibit seller from selling the property to any party not first contacted by Remax Preferred Properties. At the trial of this cause, Mr. Hawkins testified that it was Remax's position pursuant to the terms of the commission agreement and the real estate sales contract that if the plaintiffs exercised their right of first refusal, then Remax would be entitled to no fee on the sale from defendants to plaintiffs.

. . .

---

[1]The issues on appeal arise from the trial in February 2003.

[p]laintiffs did exercise their right of first refusal and this was acknowledged by counsel for the defendants. The issue appeared to be one of law as to whether by exercising their right of first refusal plaintiffs became obligated for the purchase price of $367,500.00 or were only obligated for the net proceeds of $344,500.00.

. . .

The Trial Court then concluded:

. . . The Court finds that the price is easily determinable in this instance by determining whether defendants were obligated to pay the $23,000.00 realtor fee. Having determined that defendants were not obligated, then the Court finds that the obligation of the plaintiffs was $344,500.00.

The Court then went on to hold that the plaintiffs failed to prove by a preponderance of the evidence that the defendants continued to occupy the second floor of the building subsequent to June 10, 1995, and that plaintiffs failed to establish a fair market value of the premises and defendants were therefore not obligated for plaintiffs' claims for rent, and denied a claim for attorney's fees.

Defendants brief states twenty-one issues. By way of summary, they question the amount of the purchase price as determined by the Trial Court, the omission of certain evidence, the refusal to award pre-judgment interest, the taxing of costs as well as the Chancellor's refusal to award attorney's fees.

The operative provision of plaintiffs' lease states:

3. FIRST RIGHT OF REFUSAL OPTION

In the event Lessor decides to sell the building located at 5002 Kingston Pike (the "Property"), Lessee shall have the first right of refusal of any bona fide offer at such time as office (sic) is received. Lessee shall have 15 days in which to exercise this right of first refusal option after bona fide offer is received by Lessor. (sic)

The property was put on the market in early 1995. Defendants engaged ReMax Preferred Properties and entered into a "Commission Agreement" under which ReMax would receive a $23,000.00 commission upon their producing a qualified buyer. The Commission Agreement states:

It is understood that this "Commission Agreement" in no way prohibits me [Sellers, GKV Leasing] from Selling the property myself. I retain the right to Sell to any party not first contacted by Re/Max Preferred Properties.

The sellers received and accepted an offer from a qualified third party, and executed

a Sales Agreement on May 2, 1995. The Agreement states in pertinent part: "The purchase price for the property is Three Hundred and Sixty-Seven Thousand and Five Hundred ($367,500) Dollars and is to be paid as follows: . . . Cash at closing." The Sales Agreement was made contingent upon and subject to Plaintiffs' not exercising the right of first refusal. A paragraph in the Sales Contract which precipitated this litigation states:

> 12) Seller(s) agree to pay Remax Preferred Properties, the Agent(s) who negotiated this sale, a commission equal to the amount of $23,000 of the sales price, in cash, at closing.[2]

Plaintiffs gave notice to sellers of their intent to exercise their right of first refusal in a document delivered to Defendants' counsel which reads:

> May 15, 1995
>
> This is to notify of our exercise of our first right of refusal. We understand the net proceeds to the seller to be $343,500. Please confirm as to this amount. Also we will need an original copy of the offer that is outstanding. Note this offer is contingent on there being an existing bona fide offer.

The evidence does not establish that defendants ever accepted this offer. Contract interpretation involves questions of law that are subject to *de novo* review, with no presumption of the correctness of the trial court's conclusions. *Hamblen County v. City of Morristown*, 656 S.W.2d 331, 335-36 (Tenn.1983). Issues requiring the interpretation of written contracts involve legal rather than factual issues, *Brandt v. Bib Enters., Ltd.*, 986 S.W.2d 586, 592 (Tenn. Ct. App.1998). The meeting of the minds in mutual assent to the terms of a contract is essential to the creation of an enforceable contract; one party must accept the other party's offer. *Safeco Ins. Co. v. City of White House, Tennessee*, 36 F.3d 540, 546 (Sixth Cir. 1994); *Roy McAmis Disposal Serv., Inc. v. Hiwassee Sys., Inc.*, 613 S.W.2d 226, 229 (Tenn. .App.1979). The principle of mutuality is relevant to this case because there was never an agreement, stipulations of the parties to the contrary notwithstanding. Indeed, "[t]here can be no contract without mutual assent." *Richmond v. Travelers' Ins. Co.*, 130 S.W. 790, 791 (Tenn. 1910).

The record establishes that the parties disagreed from the beginning on the terms of the purchase. At all times sellers maintained that the purchase price was $367,500.00, and never wavered from that position. Purchasers, on the other hand, "assumed" or "believed" the price to be $343,500.00 and insist that their position was clear to sellers "from day one" and they never entertained "accepting" a higher figure. As a matter of law there was no effective exercise of the right of first refusal. However, the parties took the position at trial that the exercise was valid, and

---

[2]The Sales Agreement is rife with ambiguities, but the evidence establishes the commission was to be paid from the purchase price.

essentially asked the Court to settle the dispute between them as to the amount of the purchase price.[3]

In this case there was an interim closing in December of 1995 where the purchasers tendered what they believed to be the purchase price and the sellers conveyed the property. The parties argue about whether the so-called mirror image rule is recognized in Tennessee. *See: Canton Cotton Mills v. Bowman Overall Co.*, 257 S.W. 398 (Tenn. 1924), but since the seller never accepted the terms of the purported exercise of the right of first refusal, the mirror image rule has no application to the facts of this case.[4]

The parties through their stipulation and conduct foist on the Trial Court the issue of determining the purchase price to be paid for the property,[5] and it was within the Trial Court's discretion to have refused to rule on the issue as a subject matter for a declaratory judgment. The Trial Judge concluded that the broker's commission was not owing in this case and the evidence does not preponderate against that finding. Tenn. R. App. P. 13(d). He then declared that the purchase price should be the amount offered and ultimately paid by the purchaser. Taking into account all the circumstances and actions of the parties, we agree with the Trial Judge. As we said in *Hathaway v. Hathaway*, 98 S.W.3d 675, (Tenn. Ct. App. 2002): "[a] reasonable and equitable construction is given to all contracts by the courts." The Chancellor's determination, in our view, is fair and equitable, and we affirm the Chancellor on this issue. We do not address the issue of whether brokers' commissions are to be included in an offer of acceptance in right of first refusal cases.

Plaintiffs claim that they are entitled to loss of rental income for the upstairs portion of the building for the six-month period from 6/10/95 through January 1996 because Defendants continued to occupy it. However, the Trial Court held that they failed to carry their burden of proof. We affirm the Trial Court on this issue. Tenn. R. App. P. 13(d).

As to the issues of prejudgment interest, such awards are within the sound discretion

---

[3]The Trial Court, in its Memorandum Opinion, observed:

> Based upon the opening statements of counsel, it appeared that there were few, if any, disputes of fact regarding the core issue in this case.

[4]The transition of an option into a contract to purchase can be effected "only by an unqualified unconditional acceptance in accordance with the terms and time specified." *Jones v. Horner,* 260 S.W.2d 198, 199 (Tenn. Ct. App. 1953). "The uniform rule is that an offer to make a bilateral contract must be accepted precisely according to the terms of the offer." *Id*.; *see, Ray v. Thomas*, 232 S.W.2d 32 (Tenn. 1950).

[5]Purchasers possessed only the right to accept seller's offer and had no authority to negotiate or modify its terms.

of the Trial Court, and the decision will not be disturbed by an appellate court unless the record reveals a manifest and palpable abuse of discretion. *Spencer v. A-1 Crane Service, Inc.*, 880 S.W.2d 938, 944 (Tenn.1994); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn.1992).

Defendants also seek pre-judgment interest. Their argument that the matter was not addressed in the Court's ruling or Memorandum Opinion is unclear, since a Supplemental Memorandum Opinion was entered which does address the matter, and defendants were awarded $17,266.05 interest in the Final Judgment entered on August 20, 2003. The particulars of the calculations are not readily reviewable from the Supplemental Opinion, which is simply a transcript of the hearing with counsel and the Court. The discussion therein about how the figures were calculated does not track well in transcript form. There being no patent error in the ruling, we find that the amount established was in the sound discretion of the Trial Court.

Finally, Sellers argue that the Trial Court erred in refusing to award attorney's fees, and base their claim for such fees upon a provision in the Lease Agreement which states:

> In addition to any other remedies Lessor may have at law or equity and/or under this Lease, Lessee shall pay upon demand all Lessor's costs, charges and expenses, including fee of counsel, agent, and other retained by Lessor, incurred in connection with the recovery of sums due under this Lease, or because of the breach of any covenant under this Lease or for any other relief against Lessee irrespective of whether suit is begun. Further, in the event Lessee shall bring an action against Lessor for relief hereunder and Lessor shall prevail, Lessee shall pay Lessor's reasonable attorney fees and all court costs.

It was plaintiffs' position at trial that when the option was exercised the lease was terminated and the relationship between the parties became that of vendor and vendee. Assuming, arguendo, that the right of first refusal was properly invoked (which is the position of the parties), the relationship of the parties became vendor/vendee. *See Chapman v. Chapman Drug Co.*,341 S.W.2d 392 (Tenn. 1960), ("when the making of the contract pursuant to the lease for exercising the option is complete by giving notice, . . . the land is clearly regarded in equity as the property of the vendee under the option to purchase subject to the rights of the vendor under the contract of purchase.") We affirm the Trial Court's denial of attorney's fees in this case, and further find that the costs assessed to the parties in the Trial Court was a proper exercise of the Trial Court's discretion.

For the foregoing reasons, we affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to appellants.

_____

HERSCHEL PICKENS FRANKS, P.J.