497 S.E.2d 775

**Betty L. DAVIS, as Administratrix of the Estate of Rouchell Adams, Appellant,**

v.

**Betty L. DAVIS, as Administratrix of the Estate of Kim L. Adams, Paul D. Tenney, and Horace Mann Insurance Company, Appellees.**

No. 23886.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 7, 1997.

Decided Nov. 21, 1997.

[redacted] 

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Mark A. Bramble, Kesner, Kesner & Bramble, Charleston, for the Appellant.

Daniel R. Schuda, Ancil G. Ramey, Steptoe & Johnson, Charleston, for Horace Mann Insurance Company.

PER CURIAM[1]

[redacted] This is an appeal by Betty L. Davis, as Administratrix of the Estate of Rouchell Adams, from a summary judgment order of the Circuit Court of Kanawha County in a wrongful death action. The circuit court, applying the law of Pennsylvania, construed language in certain insurance policies and concluded that the appellant's daughter did not "live with" the appellant at the time of her death. As a consequence, the court ruled that the underinsured motorist provisions in the insurance policies did not apply and that the appellant was not entitled to recover under those underinsured motorist provisions. On appeal the appellant claims that her daughter did "live with" her within the meaning of Pennsylvania law, and that the circuit court consequently erred in ruling that the underinsured motorist provisions did not apply. After reviewing the issue presented and the facts of this case, this Court disagrees with the appellant. The judgment of the Circuit Court of Kanawha County is, therefore, affirmed.

On December 7, 1992, the appellant's daughter, Rouchell Adams, was killed when a vehicle in which she was a passenger plunged off a bridge near Elkview, West Virginia. At

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992) ("Per curiam opinions ... are used to decide only the specific case before the Court; everything in a per curiam opinion beyond the syllabus point is merely obiter dicta.... Other courts, such as many of the United States Circuit Courts of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published per curiam opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a per curiam opinion.").

the time of the accident the appellant, Betty L. Davis, who was a resident of Pennsylvania, maintained five insurance policies with the appellee, Horace Mann Insurance Company. The policies contained a clause which stated:

> We will pay damages which an insured is legally entitled to recover from the owner or operator of either an uninsured motor vehicle or underinsured motor vehicle, but not both, because of bodily injury: 1. Sustained by an insured; and 2. caused by an accident.

The policies also provided that an "insured" meant "You or your relative," and they defined a "relative" as "a person related to you by blood, marriage or adoption who *lives with* you." (Emphasis supplied.)

After the accident, the appellant, as administratrix of her daughter's estate, believing that her daughter was her relative within the meaning of her insurance policies with Horace Mann Insurance Company, sought to recover under the underinsured motorist provisions in the policies. Horace Mann Insurance Company, which believed that the daughter did not "live with" the appellant within the meaning of the policies, refused to pay on the ground that the appellant's daughter was not an insured under the policies. As a consequence, the appellant instituted the present action in the Circuit Court of Kanawha County. There was no issue that the appellant's deceased daughter was related to the appellant by blood, and the sole issue presented to the circuit court for determination was whether the decedent "lived with" the appellant, within the meaning of the policies, at the time of her death.

After discovery had developed the facts to a considerable extent both parties moved for summary judgment. In accordance with the agreement of the parties, the court, because the policies were issued in Pennsylvania, addressed the question of whether the decedent's daughter was an "insured" under the law of Pennsylvania and concluded that she was not. The court stated:

> Upon due and mature consideration of the evidence presented as a whole, this Court finds that Ms. Adams' [the decedent's] contact with her parent's home was

temporary at best and ... that Ms. Adams did not "live with" her parents within the meaning of the policy language and that there is no coverage under the policy of insurance in question.

The court accordingly granted summary judgment to Horace Mann Insurance Company.

In the present proceeding the appellant claims that the circuit court erred as a matter of law in failing to find that the decedent "lived with" her mother as defined by the insurance policies at the time of her death.

■ In Syllabus Point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), the Court stated:

> A circuit court's entry of summary judgment is reviewed *de novo*.

This Court has also stated:

> A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

As previously indicated, the parties in the present case agree that the law of Pennsylvania should be applied in determining whether Rouchell Adams "lived with" the appellant at the time of her death.

■ On appeal, the appellant principally relies on the case of *St. Paul Fire & Marine Insurance Company v. Lewis*, 935 F.2d 1428 (3rd Cir.1991), in arguing that her daughter "lived with" her at the time of the daughter's death. In that case a federal court interpreting Pennsylvania law held that an individual, Andrew Klinghoffer, who was killed in an automobile accident, did not "live with" his father because, according to the appellant, he did not sleep at his father's home or take meals with his parents regularly. The appellant argues that it may be implied from this that the controlling factor in determining whether one party lives with another is whether he sleeps at the other party's home and takes meals there with regularity. We do not agree. We note that in the *St. Paul*

*Fire* case the court, while mentioning "regular, personal contacts with the insured's home," also stated:

> The verb "to live," in the sense of to live with someone in their home is defined as follows: "to occupy a home: dwell, reside" Webster's Third New International Dictionary 1323 (3d Ed.1986). The synonym "reside" is defined as "to settle oneself or thing in a place; to be stationed; remain; stay." *Id.* at 1931. These definitions indicate that the concept of living with someone contemplates, at a minimum, some consistent, personal contact with that person's home. Occasional, sporadic, and temporary contacts are insufficient.

935 F.2d at 1431–32.

In the *St. Paul Fire* case the court found that Mr. Klinghoffer maintained a separate, two-bedroom apartment with a roommate, and apparently slept in the apartment most of the time, and this factor apparently persuaded the court that Mr. Klinghoffer did not "live with" his father even though he did maintain a separate room at his father's house and shared family meals on occasion. Further, the overall impression derived from the facts of the opinion is that Mr. Klinghoffer, although he ate at his father's home, spent the greater portion of his time in the separate apartment.

The evidence as developed during discovery in the present case showed that the appellant's daughter, Rouchell Adams, although she maintained a room at the appellant's house and visited there frequently, rented a trailer in Maidsville, West Virginia, under a one-year lease, and that she also had a full-time job in Morgantown, West Virginia. It appears that she spent most of her time in West Virginia and that a boyfriend shared the trailer with her. She also paid personal property taxes in West Virginia, maintained her car registration in West Virginia, and had, prior to her death, changed her driver's license from Pennsylvania to West Virginia.

In this Court's view the evidence in the present case is, as the appellant suggests, similar to that in the *St. Paul Fire and Marine Insurance Company* case. In that case, however, the Court held that under Pennsylvania law the decedent did not "live with" his father in Pennsylvania. Likewise, the Court believes that, given the indisputable facts of the present case, which show that the appellant's deceased spent substantial time in West Virginia, earned an income in West Virginia, paid taxes and had her vehicle registration and driver's license in West Virginia, and maintained all the elements of a separate residence in West Virginia, the trial court properly concluded that she "lived in" West Virginia and that her contact with the appellant's home was of the "temporary" nature which, under Pennsylvania law, would preclude a finding that she lived there.

Additionally, the Court cannot see how further development of the evidence would alter this conclusion. In essence, after conducting a *de novo* review, this Court cannot conclude that there was a genuine issue of material fact, or that further inquiry concerning the facts was desirable, or that the trial court erred in ruling that the appellant's daughter was not covered by the appellant's insurance policies.

For the reasons stated, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.