**ALLSTATE INSURANCE COMPANY,**
**Plaintiff,**

v.

**Danielle DIGIORGI, et al., Defendants.**

**No. CIV. 2:97–1171.**

United States District Court,
S.D. West Virginia,
Charleston Division.

June 30, 1998.

Brent K. Kesner, Kesner, Kesner & Bramble, Charleston, WV, for Plaintiff.

Vincent J. King, J. Timothy DiPiero, DiTrapano & Jackson, Charleston, WV, for Defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Plaintiff's motion for summary judgment. The matter is ripe for review. For reasons that follow, the Court **GRANTS** the motion.

### I. FACTUAL BACKGROUND

Danielle DiGiorgi, daughter of divorced parents Gino DiGiorgi and Amy Carte, suffered an accidental gunshot wound while at her father's residence on September 29, 1996. A neighborhood friend wounded Danielle, using a gun found in Gino DiGiorgi's home.

At the time, DiGiorgi and Carte had joint custody of Danielle, who was twelve. Danielle spent every other Wednesday and every other weekend with her father. She generally spent Friday evening with her father at her paternal grandmother's apartment, spending the night with her grandmother.

She would spend Saturday, Saturday night and Sunday with her father at his house. Together, they would spend Sunday evening at her paternal grandmother's again. If her father had a business or personal obligation during those times, Danielle would stay at her grandmother's until he was free again.

Although she lived a majority of the time at her mother's house and, thus, had the majority of her clothing and personal possessions there, Danielle maintained her own bedroom at her father's house. In her room there, she kept a small amount of clothing, some toys and photos. The room was decorated "kind of frilly" because it was Danielle's room. Gino DiGiorgi depo., Ex. B at 20, Pl.'s mot.

Gino DiGiorgi described that when Danielle was with him, he was responsible for her supervision, and Danielle depended upon him for care and support. Danielle stated her father was always very interested in how she was doing at school and with her friends. She felt her father was no less a parent to her than her mother was.

Gino DiGiorgi paid child support to Amy Carte in the amount of $180 per month, although at the time of the shooting he was three to six months in arrears. He also purchased clothing for Danielle occasionally.

At the time of the occurrence, Gino DiGiorgi's home was insured under a policy issued by Plaintiff Allstate Insurance Company ("Allstate"). After the shooting, a claim was filed with Allstate on Danielle's behalf. Based on its investigation of the claim, Allstate filed a complaint with this Court on December 3, 1997, seeking a determination of its obligations under the policy.

The policy in question extends coverage for "damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy." Ex. A at 27, Pl.'s Complaint. It does not, however, cover "bodily injury to an insured person or property damage owned by an insured person whenever any benefit of this coverage would accrue directly or indirectly to an insured person." Id. Similar-

ly, the policy states, "We do not cover bodily injury to any insured person or regular resident of the insured premises." Ex. A at 30, *id.*

"Insured person" is defined as "you [the named insured] and, if a resident of your household: (a) any relative; and (b) any dependent person in your care." Ex. A at 3, *id.*

## II. DISCUSSION

### A. Summary Judgment Standard

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

> Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for ... discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [the nonmovant]. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson* Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]"

*Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* 513 U.S. 813, 814, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *see also*
*Cabro Foods, Inc. v. Wells Fargo Armored Serv. Corp.,* 962 F.Supp. 75, 77 (S.D.W.Va. 1997); *Spradling v. Blackburn,* 919 F.Supp. 969, 974 (S.D.W.Va.1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson · Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir.1995).

### B. Analysis

■ The issue in this case is whether Danielle is an "insured person," which is defined as "you [the named insured] and, if a resident of your household: (a) any relative; and (b) any dependent person in your care." Ex. A at 3, Pl.'s Complaint. The parties contest whether Danielle was a resident of Gino Di-Giorgi's household and a dependent person in his care. These terms are not defined in the insurance policy.

The Court recognizes that, if the policy terms at issue are ambiguous, it should construe them "strictly against the insurer and liberally in favor of the insured, although such construction should not be unreasonably applied to contravene the object and plain intent of the parties." *Shamblin v. Nationwide Mut. Ins. Co.,* 175 W.Va. 337, 340, 332 S.E.2d 639, 642 (1985) (citations omitted). Alternatively, "[w]here the provisions of an insurance policy are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl. pt. 2, *Spangler v. Armstrong,* 499 S.E.2d 865 (W.Va.1997). Similarly, "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. pt. 3, *id.* The Supreme Court of Appeals has already determined, however, that the definition of "insured person" is clear and unambiguous. *Rich v. Allstate Ins. Co.,* 191 W.Va. 308, 310, 445 S.E.2d 249, 251 (1994) (finding also that the exclusionary nature of the provision is not contrary to public policy). Consequently, the

Court applies the plain and ordinary meaning to the terms.

Many courts have held a child of divorced parents may be a resident of both households for insurance purposes.[1] The Northern District of West Virginia has held, "that under West Virginia law a person may have dual residency, especially in the case of divorced parents" depending upon the factual situation presented in each case. *Aetna Cas. & Surety Co. v. Shambaugh*, 747 F.Supp. 1203 (N.D.W.Va.1990).[2] The dual residency rule seems to be the modern trend. *See, e.g., Walbro Corp. v. Amerisure Cos.*, 133 F.3d 961 (6th Cir.1998) (holding a minor child may be "domiciled," synonomous with "resident," in both of his parents' households "if the evidence shows that the child actually resided with both parents"); *Tokley v. State Farm Ins. Cos.*, 782 F.Supp. 1375, 1381 (D.S.D.1992) ("Where the extent of the relationship and the contacts between the child and non-custodial parent are of the duration and regularity presented by this case [this District Court] believes the Supreme Court of South Dakota would adopt the generally accepted view that the child in fact lives with both parents."); *Coriasco v. Hutchcraft*, 245 Ill.App.3d 969, 185 Ill.Dec. 769, 615 N.E.2d 64, 66 (1993) (holding "minor child of divorced parents . . . who has regular visitation with a noncustodial parent is a resident of both households" for insurance purposes); *American Family Mut. Ins. Co. v. Thiem*, 503 N.W.2d 789, 790 (Minn.1993) ("Although it is possible to have only one domicile, it is possible for insurance purposes to be a resident of more than one household."). In fact, the Supreme Court of Mississippi has adopted a blanket rule that "a minor child qualifies as a 'resident' in both households of divorced parents." *Aetna Cas. & Surety Co. v. Williams*, 623 So.2d 1005 (Miss.1993).

The Court recognizes many of these cases involved a non-custodial parent's uninsured motorist policy. In such cases finding the child a "resident" of the household provided coverage for the child's injuries. In this case, however, finding the child to be a resident precludes coverage for the injuries. Although the practical result is different, the rationale for the rule holds firm.

The dual residency rule serves two purposes. First, it protects a non-custodial parent's ability to provide insurance for a minor child. As several courts have recognized, a non-custodial parent may be in

> a better financial position to maintain insurance on the minor children. Thus, to thwart the non-custodial parent's ability to provide [insurance] for his children and recover under any policies he holds could serve not only to limit the protection available to the child, but also adversely impact the custodial parent.

*Id.* at 1011. Second, it recognizes "the contemporary reality that families often separate and the children of such dissociated families must necessarily split their time between households if they are to receive the companionship, communication and guidance of both parents." *Tokley*, 782 F.Supp. at 1381.

Here, the facts clearly support a finding that Danielle was a resident of her father's household. Gino DiGiorgi was not a non-custodial parent, as were many of the parents described in the caselaw. Instead, he was a joint custodian of Danielle with her mother.[3] Danielle spends a significant amount of time with her father, on a regular schedule. Danielle testified her father was very interested in her schoolwork and friendships, that he was no less a parent than her mother. Danielle had her own room in her father's house, with clothes, photos and per-

---

1. Defendants argue for a test based upon Danielle's intent. The test the Court adopts avoids the problems inherent in relying upon a minor child's intent. Moreover, the adopted test responds to the increasingly common scenario of children dividing their time between their parents' households.

2. *Davis v. Davis*, 201 W.Va. 422, 497 S.E.2d 775 (1997), is not contrary to *Shambaugh*. *Davis* applied Pennsylvania law, rather than West Vir-

ginia, and addressed a situation involving an adult child. Finally, *Davis*, a per curiam opinion, is not legal precedent. *Id.* at 775 n. 1.

3. The Court notes Amy Carte has since been awarded sole custody of Danielle. This fact has no bearing on the Court's ruling of whether at the time of the shooting Danielle was a resident of her father's household.

sonal items. Considering all these facts, the Court finds she is and was a resident of her father's household.

■ Similarly, the Court finds she was a "dependent person in [Gino DiGiorgi's] care." This phrase has not been the subject of as much concentrated attention in the caselaw as has the term "resident." Nonetheless, as the term is not ambiguous, the Court applies its plain and ordinary meaning. Danielle was a minor who could not support herself. As with any twelve-year-old, she required the care and support of her parents. Just as she was a resident of both households, she was dependent upon the care of each parent.[4] Because Danielle was a resident of her father's household, one of his relatives and a dependent person in his care, she was an "insured person" under the Allstate policy. Accordingly, Allstate has no duty to pay the claim submitted.

### III. CONCLUSION

The Court **GRANTS** Plaintiff's motion for summary judgment and **ORDERS** this case dismissed and stricken from the docket.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

---

**4.** Defendants argue Plaintiff has shown insufficient facts that Danielle was a "dependent" in her father's care. Defendants note Danielle's father was a few months behind in his child support payments. Defendants provide no case-law to support their argument the arrearages should avoid the exclusionary clause. The Court has considered the argument and finds it without merit in the instant scenario.